## THE STATE ex rel. WILLIAM P. EVANS v. JOHN P. GORDON, State Auditor.

**In Banc, July 2, 1912.**

1. **PUBLIC OFFICER:** Salary: Value of Services. Compensation to a public officer is a matter of statute, not of contract. It does not depend upon the amount or value of the services performed, but is incidental to the office.

2. ———: ———: Method of Obtaining. The officer is restricted to the particular method or manner prescribed by statute for obtaining compensation for his official services, and can obtain compensation in no other way.

3. ———: ———: Belongs to De Jure Title. Compensation which the statute attaches to a public office as a salary for the officer is an incident to the title to the office, and belongs to the *de jure* officer; and the *de jure* officer, on establishing his title, may recover from the *de facto* officer the compensation the latter has received.

4. ———: ———: Accepting Office with Condition as to Contest Attached. One who accepts a State office does so subject to a statutory condition attached to it, that if a contest is instituted therefor by a defeated candidate, no salary shall be paid him while said contest is pending.

State ex rel. v. Gordon.

5. ———: ———: ———: **Right to Question Constitutionality of Condition.** As the Legislature may fix such compensation to a public office as it sees fit, or none at all, there can be no constitutional objection to its attaching such condition as it seems proper to the payment of the compensation, such condition to be binding upon any one who thereafter enters into such office and performs its duties; and as every such person accepts it with the statutory condition attached, he cannot afterwards challenge the power of the Legislature to impose such conditions.

6. ———: ———: **Nonpayment· of Salary During Election Contest: Class Legislation.** Sec. 11830, R. S. 1909, declaring that "whenever any office, elective or appointive, the emoluments of which are required to be paid out of the State Treasury, shall be contested or disputed by two or more persons claiming the right thereto, or by information in the. nature of a *qno warranto*, then no warrant shall be drawn by the Auditor, or paid by the Treasurer, for the salary by law attached to said office, until the right to the same shall be legally determined between the persons or parties claiming such right," is not, in that it divides persons whose election to office is being contested into artificial classes, namely, those who draw their salary from the State Treasury and those who draw their salary from a county or city treasury, violative of the constitutional provision which forbids class or special legislation, nor is said act directed primarily to election contests. It relates directly to the payment of funds out of the State Treasury, and by its terms applies to every office whose emoluments are payable from said treasury, and all such officers constitute a natural class, and the act is not invalid as class or special legislation.

7. ———: ———: ———: **Germane to Subject of Statute Amended.** An act which prohibits the payment out of the State Treasury of the salary attached to an office during an election contest therefor, is germane to the chapter of the Revised Statutes whose caption is, "Of The State Treasury," and which relates to the payment of salaries out of the State Treasury. The act appropriately found place in that chapter; and even if the Legislature had an object beyond mere treasury regulation, the subject of the act is still related to the treasury, and naturally connected therewith.

8. ———: ———: ———: **Against Public Policy.** The act which prohibits the payment of the salary attached to an office during an election contest between two candidates for the office, cannot be held to be unconstitutional as against public policy, in that it deprives the commissioned incumbent of a just reward for his labor in performing its official duties. In so far as the Legislature is not restrained by the Constitution, it is

State ex rel. v. Gordon.

the judge of the wisdom and fairness of its own enactments, and they will not be set aside unless their nullity and invalidity are placed beyond a reasonable doubt.

## Mandamus.

WRIT DENIED.

*Irwin & Peters* for relator.

(1) The act in question is class legislation and in violation of Sec. 27, Art. 4, of the Constitution of 1875, in that it undertakes to divide a natural class of persons, to-wit, all persons whose election to office has been contested, into artificial classes, to-wit, those who draw their salary from the State treasury, and those who draw their salary from a county or city treasury or receive their compensation from fees collected, and undertakes to impose a burden upon the one which it does upon the other. A statute which relates to persons or things as a class is a general law, while a statute which relates to particular persons or things of a class is a special law. State v. Tie Co., 181 Mo. 536; State ex rel. v. Washburn, 167 Mo. 68; Sams v. Railroad, 174 Mo. 53; State v. Walsh, 136 Mo. 400; Dunne v. Kansas City, 131 Mo. 1; Eating v. Hickman, 172 Mo. 237; State ex rel. v. Ins. Co., 150 Mo. 113; State ex rel. v. Wofford, 121 Mo. 61; State v. Julow, 129 Mo. 163; State v. Loomis, 115 Mo. 307; In re Flukes, 157 Mo. 125. A statute which fails to embrace all persons who are or may come into like situations and circumstances is a special law and unconstitutional. State v. Julow, 129 Mo. 163; Eating v. Hickman, 172 Mo. 257; State ex rel. v. Wofford, 121 Mo. 61; State ex rel. v. Tolle, 71 Mo. 645; State ex rel. v. Herrmann, 75 Mo. 340. (2) The statute which retains relator's earned salary, through the service of a contest notice, is a denial of a right and is a violation of Sec. 30, Art. 2, of the Constitution, and of the fourteenth amendment to the Constitution of the United States, which guarantees to relator the "due process of law." Asphalt Co. v. Bridges, 169

Mo. 376; State v. Julow, 129 Mo. 163; State v. Auditor, 33 Mo. 287; Railroad v. Chicago, 142 Fed. 844; George v. Railroad, 214 Fed. 551; Railroad v. Commission, 155 Fed. 792; State v. Derry, 171 Ind. 18; Bloom v. Hock, 63 N. J. Eq. 10; Mathews v. People, 202 Ill. 389. Labor is property. Mathews v. People, 202 Ill. 389. A person is deprived of his property not only when it is actually taken from him, but also when its capability of enjoyment is taken or impaired. Black's Constitutional Law (3 Ed.), p. 577; In re Jacobs, 98 N. Y. 98; State v. Tie Co., 181 Mo. 536. The services rendered having constituted an executed contract, the State is powerless to abrogate it without due process of law. Ex parte Goodin, 67 Mo. 637; State v. Auditor, 33 Mo. 287; O'Brien v. Ash, 169 Mo. 283. (3) The title to the act under which Sec. 11830, R. S. 1909, was enacted, is misleading and does not express the subject embraced in said act, as required by Sec. 32, Art. 4, of the Constitution of 1865, and Sec. 28, Art. 4, of the Constitution of 1875, and is therefore void. Laws 1873, pp. 90, 91; State v. Distilling Co., 237 Mo. 103; Williams v. Railroad, 233 Mo. 666; State v. Wiethaupt, 231 Mo. 449; State v. Burgoerfer, 107 Mo. 33; State v. Coffee Co., 171 Mo. 643; State v. Fort, 210 Mo. 512; Kansas City v. Payne, 71 Mo. 162; St. Louis v. Weitzel, 130 Mo. 616. (4) The State incurs no liability for salary paid to a *de facto* officer, even though the title to the office is in dispute. State v. Clark, 52 Mo. 508; Brown v. County, 112 Ia. 745; Hall v. Coulter, 117 Ky. 747; Coughlin v. McElroy, 74 Conn. 397; Demarest v. New York, 147 N. Y. 203; Chandler v. Hughes Co., 9 S. D. 24; Samuels v. Harrington, 43 Wash. 603; Wright v. Coffee Co., 21 Kan. 478; Hatton v. Babcock, 106 Mo. App. 72; Wilson v. Fisher, 140 Cal. 188; State v. Franz, 55 Neb. 167. The right of a public officer to receive pay for services rendered is regarded in the nature of a contract right. 29 Cyc. 1429; State v. Auditor, 33 Mo. 287; Ex parte Goodin, 67 Mo. 637.

The one who becomes a public officer *de facto,* without dishonesty or fraud on his part, and who renders the services required of such public officer, may recover the compensation provided by law for such services during the period of their rendition.    State v. Clark, 52 Mo. 508; Erwin v. Jersey City, 60 N. J. L. 141.

*Elliott W. Major,* Attorney-General, *Campbell Cummings* and *Charles G. Revelle,* Assistant Attorneys-General, for respondent.

(1)  Every presumption is indulged in favor of the validity of a legislative act, and it devolves upon him who assails same to clearly establish the invalidity.    State ex rel. v. McIntosh, 205 Mo. 602; In re Burris, 66 Mo. 450; In re Bledsoe Hill, 200 Mo. 646; State v. Layton, 160 Mo. 488; State ex rel. v. Aloe, 152 Mo. 477; State v. Douglas, 50 Mo. 597; State v. Addington, 77 Mo. 110; State v. Ranson, 73 Mo. 78.    (2) The act in question does not contravene the provisions of Sec. 53, Art. 4, of the State Constitution relating to title.   A mere reference to the section or chapter to be amended, without other description of the subject-matter of the amendatory law, is a sufficient title to an amendatory act which deals with the subject of the section or chapter amended.    State ex rel. v. County, 128 Mo. 440; State ex rel. v. Heege, 135 Mo. 118; Ferguson v. Gentry, 206 Mo. 189; State v. Doering, 194 Mo. 408; State ex rel. v. Herring, 208 Mo. 708; State ex rel. v. Ranson, 73 Mo. 87; De Both v. Mining Co., 141 Mo. 497.    (3)  The act is not objectionable on the grounds of special or class legislation.    The statute is a general law applying equally to all State officers whose salaries are paid out of the State treasury, and whose office is contested.    Ensworth v. Curd, 68 Mo. 282; State ex rel. v. Railroad, 48 Mo. 468; Railroad v. St. Louis, 66 Mo. 228; Hickman v. Craig,

6 Mo. App. 583; State ex rel. v. Garesche, 3 Mo. App. 584; Constitution, 1875, Schedule, Sec. 1; R. S. 1909, p. 143. The constitutional clause prohibiting class legislation is prospective in its operation. State ex rel. v. Railroad, 48 Mo. 468; Railroad v. St. Louis, 66 Mo. 228; Hickman v. Craig, 6 Mo. App. 583; State ex rel. v. County, 41 Mo. 457. The history of legislation in this State shows that the lawmaking power may divide persons and business into different classes. O'Connor v. Transit Co., 198 Mo. 640; Elting v. Hickman, 172 Mo. 237; Assn. v. Waddill, 138 Mo. 628; State ex rel. v. Speed, 183 Mo. 186. Moreover, the Constitution does not prohibit local or special leigslation in all cases. Such laws are forbidden upon the thirty-two subjects named, and only such others "where a general law can be made applicable." State ex rel. v. Speed, 183 Mo. 202. A law is valid that applies equally to all who are, or who may come into like situations and circumstances, and, for that reason, is not local or special. State ex rel. v. Speed, 183 Mo. 186; 8 Cyc. 1051. (4) Under the Constitution and laws of this State an office is not property, but is a mere public trust, created for the benefit of the public and not for the advancement of the officer. The power that created it can abolish it, subject it to such conditions as it sees fit, and the occupant thereof cannot complain. The incumbent is a mere voluntary servant, and not a contracting party. 23 Am. & Eng. Ency. Law, p. 328; Throop on Public Officers, p. 19, and Secs. 446, 450; Mechem on Public Offices and Officers, Sec. 856; State ex rel. v. McCracken, 60 Mo. App. 656. Again, the right of a public officer to fees is derived from the statute. He is entitled to no fees for services he may perform as such officer unless the statute gives it. When the statute fails to provide a fee for services he is required to perform as a public officer, he has no claim upon the State for compensation for

such services. Gammon v. County, 76 Mo. 676; State v. Wofford, 116 Mo. 223; Shedd v. Railroad, 67 Mo. 687; Ford v. Railroad, 29 Mo. App. 616; State ex rel. v. Brown, 146 Mo. 406; Williams v. County, 85 Mo. 645; Bank v. Refrigerator Co., 236 Mo. 414; Hill v. County, 195 Mo. 511. Since the Legislature has the absolute power to determine the compensation of a public officer, and to require him to render official services without pay, it necessarily follows that it can name the terms and conditions upon which he shall receive pay. Railroad v. Kirkwood, 159 Mo. 253; Blanding v. Burr, 13 Cal. 343; State v. Holder, 76 Miss. 181. (5) The act does not violate the principles of public policy, this being a question solely for the law-making power. State v. Addington, 77 Mo. 110; State v. Bixman, 162 Mo. 29; Hamilton v. Court, 15 Mo. 20; State ex rel. v. Gordon, 236 Mo. 160; State v. Swaggerty, 203 Mo. 527; Court v. Griswold, 58 Mo. 175; Hannibal v. County, 69 Mo. 571; State v. Clark, 54 Mo. 17; Railroad v. Little, 45 Ga. 388; State ex rel. v. McClelland, 138 Ind. 395; Horton v. Comrs., 43 Ala. 605; People v. Railroad, 34 Barb. 138.

FERRISS, J.—This is an original proceeding by mandamus on behalf of William P. Evans, Superintendent of Public Schools, to compel John P. Gordon, State Auditor, to issue to relator a warrant for his salary as Superintendent of Public Schools for the thirteen months ending January 31, 1912, in the sum of $3250, which salary has been withheld by the State Auditor because of a pending contest proceeding against relator instituted by Howard A. Gass contesting relator's right to the office of Superintendent of Public Schools, which contest has been pending in this court since relator was inducted into office, January 9, 1911. The petition states:

"1. That the relator is now, and ever since the first day of January, 1911, has been, the duly elected,

commissioned, qualified and acting Superintendent of Public Schools for the State of Missouri, and during all of said period of time has resided at the seat of government and devoted all of his time to the performance of the duties of his office, as prescribed by law and the Constitution of the State of Missouri.

"2.   That respondent, John P. Gordon, is now, and ever since the ninth day of January, 1909, has been, the duly elected, qualified and commissioned Auditor of the State of Missouri; that as such officer it becomes and is the duty of respondent to pay the salaries of the several State officers at the end of each calendar month, the salary earned by such officer for such month, by issuing his warrant upon the State Treasurer, whenever there is any money in the State treasury to the credit of the fund from which such salary is payable.

"3.   That the Forty-sixth General Assembly of the State of Missouri appropriated the sum of six thousand dollars to pay relator's salary for the years 1911 and 1912, which said sum of money is now in the hands of the State Treasurer to the credit of the proper fund, and is available for the payment of relator's salary, and the sum of money now in said fund is and was on the second day of February, 1912, in excess of relator's demand, and is available for no other purpose than the payment of relator's salary.

"4.   That there is now justly due and owing to relator his salary for the entire year of 1911, in the sum of three thousand dollars, and his salary for the month ending January 31, 1912, in the sum of two hundred and fifty dollars; that relator has heretofore on the second day of February, 1912, presented to respondent his account for services rendered the State of Missouri covering the time herein mentioned, and has requested respondent to audit said claim and account, and issue to him, the relator, a warrant upon the State Treasurer in the sum of three thousand two

hundred and fifty dollars, in payment for the services so rendered as Superintendent of Public Schools of the State of Missouri, but that respondent has refused and still refuses to issue to relator any warrant whatever on account of said services.

"5. That respondent, upon receipt and presentation of relator's claim and demand for his salary as aforesaid, declined and refused to audit and allow said claim, or to issue to relator a warrant for the whole or any part thereof; that respondent's refusal to audit said account or to issue a warrant to relator is in words and figures as follows:

" 'I wish to call your attention to Sec. 11830, R. S. 1909, which reads as follows:

" ' "Sec. 11830. Whenever any office, elective or appointive, the emoluments of which are required to be paid out of the State treasury, shall be contested or disputed by two or more persons claiming the right thereto, or by information in the nature of a *quo warranto,* then no warrant shall be drawn by the Auditor, or paid by the Treasurer, for the salary by law attached to said office, until the right to the same shall be legally determined between the persons or parties claiming such right: *Provided, however,* and it is hereby further enacted, that in all cases when the person, to whom the commission for such office shall have issued, shall deliver to the party contesting his right to such office a good and sufficient bond, in double the amount of the annual salary of such office, conditioned that if, upon final determination of the rights of the contestants, it shall be decided that the obligor is not, and that the obligee therein is, entitled to the office in controversy, he shall pay over to the obligee the amount of salary therefor drawn by him as such officer, together with ten per centum interest thereon from the date of the receipt of each installment received by him, then, and in such case, notwithstanding the provisions of this law, a warrant may be drawn

by the Auditor, and paid by the Treasurer to the person holding the commission aforesaid, for the amount of his salary, as the same shall become due. It shall be the duty of any person contesting the election of any such officer to give notice of such contest to the State Auditor, and no such contest shall be heard or determined until he shall satisfy the tribunal trying such contest that such notice has been given.''

'' 'The notice referred to in that section has been given to me, and under that notice and the law itself I am unable to draw you a warrant for said amount.'

"Relator says that it is true that an election contest is pending against him for said office by Howard A. Gass, and that notice of such contest has been duly served upon respondent, but relator alleges that respondent is not authorized or warranted in withholding, and has no right to withhold, relator's salary or any part thereof, or to refuse to audit relator's demand for said salary and to draw a warrant for payment thereof, by reason of the aforesaid election contest and by reason of the notice thereof heretofore served upon respondent, because said Sec. 11830, R. S. 1909, is unconstitutional, void and of no effect whatever, for the following reasons:

"*a.* That the title to the bill by which said Sec. 11830, R. S. 1909, was enacted by the General Assembly of Missouri, is in conflict with, and does not conform to, the requirements of Sec. 32, Art. 4, of the Constitution of the State of Missouri, adopted in the year 1865, which said Constitution was then in full force and effect at the time said section was enacted into law, in this, that it does not express the object and purpose of said bill, to-wit, the withholding of the salary of certain officers whose right to office is contested; but merely purports to add two sections to Ch. 10, as revised and published in 1865, entitled, 'Of the treasury department,' which said chapter of said statutes in no manner or form affects or deals with

election contests or the salaries to be paid to public officers or the right to withhold the salary of a contestee in an election contest.

"*b.* That the title to the bill by which said Sec. 11830, R. S. 1909, was enacted is in conflict with said Sec. 32, Art. 4, of the Constitution of Missouri, adopted in the year 1865, in this, that the said title to the said bill is misleading, indefinite, and does not express the subject, and does not set forth the object and purposes of said bill, because it purports to affect only the treasury department of the State of Missouri, whereas the bill itself does not affect the State of Missouri or the treasury department, nor does it relate to said treasury department in any manner whatever, but its general purpose, object and intent is to undertake to deprive contestees in certain election contests of the right to receive and appropriate the salaries and emoluments which may be earned by such contestees who hold office and discharge the duties thereof during the time that such election contest is pending determination.

"*c.* That said Sec. 11830, R. S. 1909, is in conflict with, and its enactment was prohibited by Sec. 27, Art. 4, of the Constitution of Missouri, adopted in the year 1865, and Sec. 53, Art. 4, of the Constitution of Missouri, adopted in the year 1875, and now in force, because said section is a special law, and is class legislation in this, that it divides or attempts to divide a natural class of officers into artificial classes, and only provides for withholding the salaries and emoluments of officers whose salaries and emoluments are payable by the State Treasurer, while it permits officers of the same class whose salaries and emoluments are payable by counties, cities or other municipalities, to draw and receive their salaries and emoluments notwithstanding their right to office may be contested or in dispute.

"*d.* That relator, as incumbent of the office of Superintendent of Public Schools of the State of Missouri, from the first day of January, 1911, until the first day of February, 1912, was compelled, under the provisions of Sec. 18, Art. 2, of the Constitution of Missouri adopted in 1875, to reside at the seat of government and devote his time to the performance of said official duties, and did so reside at the seat of government, and did so personally devote his time to the performance of said official duties; wherefore, relator says that said Sec. 11830, R. S. 1909, by withholding or attempting to withhold relator's salary and compensation for the aforesaid time and services, deprives him of his property and the fruits of his labor without due process of law, as prohibited by Sec. 30, Art. 2, of the Constitution of Missouri, and as prohibited by the Fourteenth Amendment to the Constitution of the United States.

"*e.* There being no law whereby the said Howard A. Gass, as contestant in the aforesaid election contest, could collect, receive or appropriate the salary which has been earned by the relator while performing the duties of said office, as hereinbefore recited, that provision of said Sec. 11830, R. S. 1909, which requires relator to give bond to said Howard A. Gass, contestant as aforesaid, for the payment to him of such salary as relator may receive during the pendency of said election contest, is in conflict with Sec. 4, Art. 2, of the Constitution of Missouri, adopted in 1875, guaranteeing to every person the enjoyment of the gains of his own industry.

"*f.* The relator is a person of small means, and is financially unable to comply with the provisions of said Sec. 11830, R. S. 1909, by giving to contestant a bond in the sum of twenty-four thousand dollars or any part thereof; that a certificate of election has been duly issued to relator, and that until final determination of the contest now pending he, the relator, is

*de facto* and *de jure* a State officer, and under the provisions of the Constitution and laws of the State of Missouri he is required to reside at the seat of government and devote all his time to the discharge of the duties of his said office, and said Sec. 11830, R. S. 1909, which does, or attempts to, deprive him of the emoluments of said office, is unconstitutional and void and against the sound public policy of the State of Missouri, as it tends to deter men of small means from seeking election to a State office; that it places an unreasonable and unjust burden upon an officeholder by unjustly depriving him of the means of support while discharging the duties of his office, and greatly hinders him in the proper performance of his official duties; that it imposes on the contestee an unjust burden and a usurious rate of interest, and seeks to give the benefit of such burden to the person who has not performed the duties of the office or rendered to the State any services whatever; that it places an unjust burden and penalty upon an officeholder holding a State office, through the mere filing of a contest proceeding against him, which may be the sole result of malice, spite or ill will toward the contestee, and thereby deprive him of the fruits of an office to which he has been legally and fairly elected; that it tends to encourage election contests by offering an inducement to the contestant upon one hand, and by unjustly penalizing the contestee upon the other; that it offers an inducement to the contestant to unnecessarily delay the final determination of a contest proceeding by dilatory proceedings, greatly to the detriment of the contestee and the hindrance of the duty which he owes to the State as an officeholder thereof.

"Wherefore, relator says he has no adequate remedy at law, and prays this court to issue a temporary writ of mandamus against the respondent, requiring him to show cause, if any he has, why he has not issued a warrant to relator for the three thou-

sand two hundred and fifty dollars due him as aforesaid for his salary and services as Superintendent of Public Schools of Missouri.

"Relator further prays that upon final hearing of this cause a peremptory writ of mandamus shall issue against said respondent, requiring him forthwith to issue to relator a warrant upon the treasury of Missouri for said sum due to relator, as aforesaid, and for such other and further relief as may be proper."

To this petition respondent filed a demurrer as follows:

"Now comes the respondent John P. Gordon, and demurs to the alternative writ of mandamus heretofore issued, and says that relator ought not to have his writ of peremptory mandamus for the following reasons, to-wit:

"1. Neither the petition nor alternative writ states facts sufficient to constitute a cause of action.

"2. Said petition and alternative writ, and the matters and things therein stated and set forth, are not sufficient in law to entitle relator to the relief asked, nor to authorize the issuance of the writ of mandamus herein prayed for, or to any relief whatever.

"3. Because the matters and things therein stated disclose that relator is precluded and prohibited by the laws of this State from recovering a warrant upon the treasury of Missouri for the sum mentioned or any other sum.

"4. Because the matters and things stated disclose that respondent is not only authorized, but is required, as an officer of this State, to refuse to issue to relator a warrant for said sum or any other sum whatever.

"Wherefore, respondent prays, for the reasons set out above, and for other and further reasons appearing upon the face of relator's petition and the al-

ternative writ, that the same be dismissed, that the writ be denied, and that he be permitted to go hence without day, and for his costs.''

We have set out the petition *in extenso,* because it contains a full presentation of relator's theory of the case.

The points are presented thus in the brief for relator:

''The act of the Legislature, whereby it is sought to deprive relator of his earned salary, is unconstitutional and void for the following reasons:

''1st. Because it denies to relator the enjoyment of that provision of Sec. 4, Art. 2, of the Constitution, which provides, 'That all persons have a natural right to life, liberty and the enjoyment of the gains of their own industry.'

''2nd. That it deprives relator of the right guaranteed by Sec. 30, Art. 2, of the Constitution, wherein he is assured 'that no person shall be deprived of life, liberty or property without due process of law.'

''3rd. That the act aforesaid violates the Fourteenth Amendment to the Constitution of the United States, which provides: 'Nor shall any State deprive any person of life, liberty or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws.'

''4th. That the act of the Legislature violates the provisions of Sec. 53, Art. 4, of the Constitution of Missouri, forbidding the Legislature to grant 'to any corporation, association or individual any special or exclusive right, privilege or immunity.'

''5th. That it violates Sec. 53, Art. 4, of the Constitution of Missouri, which declares that 'where a general law can be made applicable, no local or special law shall be enacted.'

''6th. That the act in question violates Sec. 32 of Art. 4 of the Constitution of Missouri, 1865, which provides that 'no law enacted by the General Assem-

bly shall relate to more than one subject, and that shall be expressed in the title. But if any subject embraced in the act be not expressed in the title, such act shall be void only as to so much thereof as is not so expressed.'

"7th. Because it is against the sound public policy of the State to deprive a public officer of his salary earned, while compelling him to perform the duties of the office."

The first three points may be treated as one, and are so treated in relator's brief. Points 4 and 5 may also be treated together.

I. Compensation to a public officer is a matter of statute, not of contract; and it does not depend upon the amount or value of services performed, but is incidental to the office.

Throop on Public Officers (Sec. 443) says: "It has been often held, that an officer's right to his compensation does not grow out of a contract between him and the State. The compensation belongs to the officer, as an incident of his office, and he is entitled to it, not by force of any contract, but because the law attaches it to the office."

Mechem on Public Offices and Officers says: "Sec. 855. As has been seen, the relation between the officer and the public is not the creature of contract, nor is the office itself a contract. So his right to compensation is not the creature of contract. It exists, if it exists at all, as the creation of the law, and when it so exists, it belongs to him 'not by force of any contract, but because the law attaches it to the office.' The most that can be said is that there is a contract to pay him such compensation as may from time to time be by law attached to the office.

"Sec. 856. Unless, therefore, compensation is by law attached to the office, none can be recovered. A person who accepts an office to which no compensation

is attached is presumed to undertake to serve gratuitously, and he cannot recover anything upon the ground of an implied contract to pay what the service is worth.''

To the same effect are our decisions. [State v. Wofford, 116 Mo. 223; Gammon v. Lafayette County, 76 Mo. 675; State v. Brown, 146 Mo. 406.] In Bank v. Refrigerating Co., 236 Mo. 414, BROWN, J., speaking for the court, says: ''When the law requires a specific service to be performed by a public officer, he must perform that service regardless of whether any provision has been made to pay him for same.''

Not only is the right to compensation dependent upon statute, but the method or particular mode provided by statute must be accepted. On this point the Kansas City Court of Appeals says: ''It seems the general rule in this country, as announced by the decisions and text-writers, that the rendition of services by a public officer is to be deemed gratuitous, unless a compensation therefor is provided by statute. And further, it seems well settled that if the statute provides compensation in a particular mode or manner, then the officer is confined to that manner, and is entitled to no other or further compensation, or to any different mode of securing the same. [Throop on Public Officers, Secs. 446, 450; Shed v. Railroad, 67 Mo. 687, 690; Gammon v. Lafayette County, 76 Mo. 675; Williams v. Chariton County, 85 Mo. 645; Ford v. Railroad, 29 Mo. App. 616.] Such statutes, too, must be strictly construed as against the officer. [Ford v. Railroad, supra, and Shed v. Railroad, supra.]'' [State ex rel. v. McCracken, 60 Mo. App. l. c. 656.]

It is also settled law that, as the compensation is incident to the title, it belongs to the *de jure* officer. As to the right of the *de facto* officer to draw the salary during his incumbency, the authorities are not harmonious. Both Throop and Mechem lay down the rule, based upon New York decisions, that the *de facto*

officer has no right to the salary, and this because a claim for salary must be based upon title. [Throop on Public Officers, Sec. 517; Mechem's Public Offices and Officers, Sec. 331.] And such is the holding in many jurisdictions. Our court, in several cases, adheres to the contrary doctrine. [State v. Draper, 48 Mo. 213; State v. Clark, 52 Mo. 508; State v. John, 81 Mo. 13; Dickerson v. Butler, 27 Mo. App. 9; State ex rel. v. Walbridge, 153 Mo. 1. c. 202.] All the authorities, however, agree that the *de jure* officer, on establishing his title, may recover from the *de facto* officer the compensation which the latter has received.

Under the Act of 1873 (Sec. 11830, R. S. 1909), the compensation payable to the office which relator is holding in possession was made subject to the condition that it should not be paid pending a contest for the office. Relator accepted the office with knowledge of this condition. As the Legislature may fix such compensation to a public office as it sees fit, or none at all, we can see no constitutional objection to its attaching such conditions as it deems proper to the payment of the compensation, such conditions to be binding upon any one who thereafter enters upon such office and performs its duties. As stated above, the compensation has no relation to the amount or value of the service. There can be no application of the doctrine of *quantum meruit*. The officer takes the office *cum onere*. Having accepted it with the conditions imposed by the Legislature, upon whose will he must depend for any compensation at all, he cannot afterwards challenge the power of the Legislature to impose such conditions.

The relator concedes in his brief that there is no property right in an office which may not be taken away by future legislation, and, further, that an office is accepted subject to future legislation. It is, however, no less true that the office is accepted subject to existing legislation. If, after a man has accepted of-

fice, and has performed its duties, and has a right to compensation therefor, a law is passed depriving him of such compensation, the situation will arise which relator argues exists here. He relies upon the case of State ex rel. Register v. Auditor, 33 Mo. 287. In that case, after the services had been performed by the duly elected and qualified officer, the General Assembly passed a resolution forbidding the Auditor to allow his account for compensation for services rendered. It was held that the officer's right to compensation was vested before the resolution was passed, and that the act of the General Assembly, being retrospective, was invalid. Obviously that case does not help the relator here.

It is urged, further, that inasmuch as the relator is compelled by law to perform certain duties, he is entitled to pay therefor. We have shown that mere incumbency does not entitle an officer to pay. True, if he accepts the office, he must be faithful in the performance of its duties. But the law does not compel him to take the office. He accepts it of his free will, and with full knowledge of the conditions imposed by existing law.

We find one case only in our reports involving a consideration of this Act of 1873. In the case of State ex rel. v. Clark, 52 Mo. 508, the relator presented a petition to this court for a writ of mandamus to the State Auditor, alleging that he was commissioned as circuit judge on April 20, 1869, and was discharging the duties of that office, and that on April 1, 1873, he presented his account for the previous quarter's salary to the Auditor, who refused a warrant therefor. In his return the Auditor interposed this same Act of 1873, and stated that a writ of *quo warranto* was pending to determine title to the office held by the relator. The answer to the return admitted the pendency of the writ, but said that it was issued at the relation of the Attorney-General, and did not involve a contest for

the office. The answer further pleaded that the statute was unconstitutional. The court, without noticing the constitutional question, held that the act did not apply where there was no contest pending and where a *quo warranto* was filed by the Attorney-General at his own relation to determine only whether the respondent was a usurper in office. The validity of the Act of 1873 was apparently conceded by both court and counsel.

II. Nor does the act in question violate the constitutional provision which forbids special or class legislation. Dealing as it does exclusively with funds in the State treasury, it applies to each and every officeholder who is paid directly from the treasury. The class thus designated includes every person who could be affected by the law, which does not refer to particular officers, but is general in its application to all persons within the class. The power of the Legislature to designate a class and legislate with regard to the class so created cannot be doubted. It must be a natural class, and the law must apply to all members thereof. In Lynch v. Murphy, 119 Mo. 163, an act was challenged as special which made a class of road districts in all counties where there were dramshops, and townships which had compromised or might compromise their indebtedness. The act was held valid. The court said, page 172:

"The statute now under consideration refers to all the road districts in all the counties in the State where there are dramshops, and to all townships that are indebted and that have compromised, or that may hereafter compromise their indebtedness. It does not refer or have reference to any particular county, road district or township, and is not local or special in its application. . . .

"It may be true, and doubtless there are counties in the State which have no dramshops, or that have

no township indebtedness, and to which, for that reason, the act does not apply, but it is nevertheless general in its application because it does apply to all road districts and townships including those which have compromised or may thereafter compromise their indebtedness. It could not be more general in its application.''

In Elting v. Hickman, 172 Mo. l. c. 257, we say: ''It is well settled that a law which includes all persons who are in or who may come into like situations and circumstances is not special legislation.'' To the same effect are State ex rel. v. County Court, 128 Mo. 427; Hamman v. Cen. Coal & Coke Co., 156 Mo. 232; Ex parte Handler, 176 Mo. l. c. 389.

This court has repeatedly approved the following definition laid down in Wheeler v. Philadelphia, 77 Pa. St. 338: ''A statute which relates to persons and things as a class is a general law, while a statute which relates to particular persons or things of a class is special.'' [O'Connor v. Transit Co., 198 Mo. l. c. 639.]

In State v. Whitaker, 160 Mo. 59, we sustained a classification which required electric street cars to be equipped with screens to protect motormen, but which did not include cable and horse cars. In Ex parte Loving, 178 Mo. l. c. 214, we say: ''It has long been recognized that the Legislature could distinguish classes of subjects to which it would make its legislative provisions applicable.''

The question is, was this a reasonable classification in view of the legislative purpose? The immediate object and effect of the act in question is to retain in the State treasury the salary of an official whose title to the office is contested, pending such contest. It is manifest that the act is as general as possible in its application, inasmuch as it applies to all officials whose pay comes from the State treasury. Ap-

plicable to this discussion is the following from 26 Am. & Eng. Ency. Law, p. 683:

"In order to determine whether or not a given law is general, the purpose of the act and the objects on which it is intended to operate must be considered. If these objects are distinguished from others by characteristics evincing a peculiar relation to the legislative purpose, and showing the legislation to be reasonably appropriate to the former and inappropriate to the latter, the objects will be considered, as respects such legislation, to be a class by themselves, and legislation affecting such a class, to be general."

The argument of the relator proceeds upon the theory that the Act of 1873 involves a classification of contested election cases. His position is stated in his brief thus: "The act in question is clearly class legislation, in that it undertakes to divide a natural class of persons, to-wit, all persons whose election to office has been contested, into artificial classes, to-wit, those who draw their salary from the State treasury, on the one hand, and those who draw their salary from a county or city treasury, or receive their compensation from fees collected, on the other." And again: "Contestants in election contests form a class of which no division or distinction can be made without violating the constitutional prohibition."

All his citations of authorities are upon this theory. In our judgment, relator misapprehends the nature and scope of the act, in so far as he regards the act as directed primarily to election contests. In point of fact, it relates directly to payment of funds out of the State treasury, and inasmuch as by its terms it applies to every office whose emoluments are payable from the treasury, such offices naturally constitute the class to which the legislation applies, and inasmuch as it applies equally to all members of that class, it cannot be regarded as special legislation.

245 Mo.—3

III.  Relator contends that the Act of 1873 violates this provision of the State Constitution: "No law enacted by the General Assembly shall relate to more than one subject, and that shall be expressed in the title." [Sec. 32, Art. 4, Constitution of 1865.]

The act in question, now Sec. 11830, R. S. 1909, was enacted in 1873 (Laws 1873, p. 90), under the following title: "An act to amend chapter ten of the general statutes of Missouri, being chapter one hundred and thirty-seven of Wagner's Statutes, by adding two new sections thereto."

Chapter 10, R. S. 1865, bears this caption: "Of the State treasury." It must be, and is, conceded that the title of the act, by reference to the chapter amended, is broad enough to include the subject of the Act of 1873, if that subject is germane to the subject of said chapter 10. [State ex rel. v. County Court, 128 Mo. 440; State v. Doerring, 194 Mo. 398.] Chapter 10 prescribes in detail the duties of the State Auditor and State Treasurer regarding the disbursement of the funds in the State treasury. It is made the duty of the Auditor to audit, adjust and settle all claims against the State payable out of the treasury, and draw his warrant upon the treasury therefor. The statute, in great detail, imposes conditions and limitations upon the authority of the Auditor in allowing and auditing claims. Sec. 28 of said chapter makes it the duty of the Auditor to draw his warrant in payment of all salaries and pay allowed by law.

The act in question forbids the State Auditor to pay the salaries of certain officers when and during the time the office is being contested, unless a bond be given as provided in the act. We think the subject of the act is germane to the chapter to which it is added as an amendment.

It is urged that the State has no interest in the matter of a contest, and that it is protected in paying the salary to the *de facto* officer. This insistence is

apart from the question whether the subject of the bill is germane to chapter 10, which treats of the treasury. As the object of this statute is to withhold payment from the treasury of a salary, pending a contest for the office, we can conceive of no more appropriate place for the law than in the chapter relating to payment of salaries out of the State treasury. Even if the Legislature had an object beyond mere treasury regulation, the subject of the act is still related to the treasury, and naturally connected therewith. [State ex rel. Tolerton v. Gordon, 236 Mo. 142.] This provision of the Constitution has often been construed by this court, and always liberally, so as not to hamper the Legislature. [Coffey v. Carthage, 200 Mo. 616; State ex rel. v. Miller, 100 Mo. 439; Ferguson v. Gentry, 206 Mo. 189.]

IV. Finally, it is urged that this act is against public policy, in that it deprives a man of the just reward for his labor. This argument could appropriately be made to the Legislature. In so far as that body is not restrained by the Constitution, it is the judge of the wisdom and fairness of its enactments. We have no right to set aside a statute unless it is clearly violative of the Constitution. This court has again and again announced its adherence to this position. It is well expressed by WAGNER, J., in State v. Railroad, 48 Mo. 470, as follows:

"When courts are called upon to pronounce the invalidity of an act of the Legislature, passed with all the form and ceremonies requisite to give it force, they always approach the question with great caution, and view it with the most careful and attentive deliberation, and never declare a statute void unless in their judgment its nullity and invalidity are placed beyond a reasonable doubt. No rule of construction is better established, both upon principle and authority, than that acts of the Legislature are to be pre-

sumed constitutional until the contrary is clearly shown; and it is only when they manifestly infringe on some provision of the Constitution that they can be declared void for that reason. In case of doubt, every possible presumption not directly and clearly inconsistent with the language and subject-matter, is to be made in favor of the constitutionality of the act.''

In our judgment, the demurrer should be sustained. It is so ordered. All concur, except *Kennish* and *Brown, JJ.*, not sitting.