## L. M. LUTH, Respondent, v. KANSAS CITY, Appellant.

Kansas City Court of Appeals, February 16, 1920.

1. **DE JURE AND DE FACTO OFFICERS:** Payment of Salary: Good Faith. The statement made by courts that a *de jure* officer cannot recover salary of his office when such salary has been paid to the *de facto* officer, should be qualified by the further statement that the payment was made in good faith.

2. **SALARY:** Legal Title: Performance of Duties. The salary of an office follows the legal title to the office and a *de jure* officer may claim the salary, though he has not been allowed to perform the duties of the office.

3. **DE FACTO OFFICER:** Salary: Action. Since a *de facto* officer has not the legal title to the office he cannot maintain an action for the salary though he may have performed the duties of the office.

4. **OFFICERS:** Rival Claimants Litigation: Appeal: Payment Not in Good Faith. Where a city had notice that there were two rival claimants to the chief clerkship in the water department, and that the conflicting claims were pending on appeal in the Supreme Court, the salary having been withheld from both claimants, after-

wards attempts to have the appeal dismissed and on failure to do so, nevertheless payed the back salary, in a lump sum, to the *de facto* officer, a short time before the Supreme Court decided the case against the claim of the *de facto* officer; it was *held* that the payment was not made in good faith and that the *de jure officer*, could maintain an action against the city for the salary.

5. **TWO CLAIMANTS: Notice: De Jure Officer Right To Salary.** A city with notice that two persons are claiming one of its offices and that these claims are in litigation and it has refused payment of salary to each, cannot afterwards, shortly before decision of the case, pay the back salary to the wrongful claimant and thereby escape payment to the *de jure* officer. It would be an act of bad faith. The city could protect itself by not paying either until the litigation was ended, or if the matter was no in litigation by compelling them to interplead.

6. **GOOD FAITH: Evil Intent: Dishonesty.** To be an act not in good faith by city authorities in paying a *de facto* officer the salary attached to the office, does not mean that the act must be done with evil or dishonest intent.

Appeal from Jackson Circuit Court.—*Hon. Wm. O. Thomas*, Judge.

AFFIRMED.

*Davis & Woodruff* and *Richard D. Noel* for respondent.

*E. M. Harber* and *Francis M. Hayward* for appellant.

ELLISON, P. J.—This action was brought for salary alleged to be due plaintiff as chief clerk in the water department of the defendant city. The judgment in the trial court was for the plaintiff and the city appealed.

It seems that on the 10th of June, 1910, P. C. Folk was appointed chief clerk in the office of Assessor and Collector of Water rates for Kansas City, Missouri. His appointment was made in the manner prescribed by what is called the new charter of Kansas City adopted in 1908. That charter provided for civil service com-

missioners with rules, governing appointment to office.

Under the provisions of that charter the civil service commissioners by examination of applicants for office, on the 22nd of March, 1911, created an eligible list of persons and this plaintiff stood highest on the list and Folk failed to receive grade sufficient to put him on the list. The civil service commissioners certified the name of plaintiff to the water commissioner as the person eligible to the position of chief clerk to the water commissioner and that officer appointed him as clerk on the 23rd of March, 1911. In a few days (the 11th of April, 1911), he entered on the discharge of his duties, and performed them (except as partially interfered with by Folk) until the 10th of October, 1911, and his salary of $150 per month was paid, monthly, to him; it being at that date discontinued by the city on account of an injunction order. During this time Folk did not surrender his claim to the office and continued to perform a small part of the duties connected therewith. This dual performance of duties continued until plaintiffs salary was cut off, when he felt forced to quit and Folk performed all the duties until the 22nd of July, 1912; though plaintiff continuously disputed his right and stood ready to perform the duties.

It thus appears that during this conflict between the two claimants the city, as above stated, was enjoined by the circuit court from paying plaintiff any salary and thereafter did not pay a salary to *either* plaintiff or Folk until the 22nd of May, 1912, it paid Folk from the time it discontinued payment to both, the sum of $1185 in bulk. The injunction suit was appealed to the Supreme Court where the judgment was reversed and the injunction dissolved, that court declaring plaintiff the right claimant to the office and he was then given possession.

Recapitulating, it appears that Folk was the incumbent of the office of chief clerk in the water commissioner's office and that under the city charter plaintiff was appointed in his place and Folk refused, in part, to sur-

render; and plaintiff was finally adjudged to be the rightful claimant. That no payments of salary were made to either for several months when the city paid it to Folk notwithstanding the pendency of the injunction in the Supreme Court. Plaintiff afterwards brought this action for the salary accruing during the period he was deprived of the office, the city having paid it to Folk.

The defense made by the city is that Folk was the *de facto* officer and that having been paid him the salary, it could not pay the same salary to plaintiff, though the latter had at the time title to the office. As a proposition of law the city is sustained by much au-thority. [Dolan v. Mayor, 68 N. Y. 274; Naul v. Colter, 117 Ky. 747; Scott v. Crump, 106 Mich. 288; Shannon v. Portsmouth, 54 N. H. 183; Brown v. Tama County, 122 Iowa, 745.]

There are many of the opposite view. [Cleveland v. Suttner, 92 Ohio St. 493; State ex rel. v. Carr, 129 Ind. 44; Hogan v. Hamilton Co., 132 Tenn. 554; Tenner v. Edwards, 31 Utah, 80; People v. Culton, 28 Calif. 44; Andrews v. Portland, 79 Maine, 484; Memphis v. Woodward, 59 Tenn. 499, 12 Heiskell.]

In this State it is held that a salary is attached to and depends upon the legal title to the office and that the *de jure* claimant is entitled to the salary even though he has not occupied the office or performed the duties thereof. [State ex rel. v. Walbridge, 153 Mo. 194, 203; State ex rel. v. Gordon, 245 Mo. 12, 28, 29.] And follow-ing the logical result of the rule stated in those cases it was held in Sheridan v. St. Louis, 183 Mo. 25, 38-40, that a *de facto* officer who has performed the func-tions of the office cannot recover the salary attached to such office. Throop on Public Offices and Meehem on Public Office and Officers cited in those decisions sus-tain them.

While those cases are in point by controlling infer-ence, they do not involve the precise question before us, which is this; If the *de facto* officer *has been paid* the

salary, can the *de jure* officer compel the municipality to pay, to him. Those courts which deny, outright, that this can be done, put it on the ground that since there is no contractual right with the public to a salary, it is but good policy to protect the public from a second payment; and also the necessity that public official functions shall be performed by some one, whether he be the rightful one, or otherwise.

Other courts qualify that rule by the statement that the payment to the *de facto* officer must have been made *in good faith.* The following is quoted approving-ly from Mechem on Public Office and Officers, sec. 332, in State ex rel v. Walbridge, 153 Mo. l. c. 203 and State, ex rel. v. Babcock, 106 Mo. App. 72; viz. "If payment of the salary or other compensation be made by the government, *in good faith* (Italics ours) to the officer *de facto,* while he is still in possession of the office, the government cannot be compelled to pay it a second time to the officer *de jure* when he has recovered the office, at least where the officer *de facto* held by color of title." The same qualification is found in The People v. Schmidt, 281 Ill. 211, 213; Coughlin v. McElroy, 74 Conn. 397, 402, and many other cases we need not stop to cite, for the reason we regard the case of Gracey v. St. Louis, 213 Mo. 384, 397, as deciding the question to every intent; for, while no use is made in that case of the word "good faith," the simple statement of what was there done by the city makes clear that the Supreme Court thought the act described not done in good faith, as that term is known to the law. The court said: "Here plaintiff was not 'removed,' as that term is understood in the law. What was done was not legally done and therefore had o legal effect. Another was assigned his duties and that other was paid by the city. That was the city's affair, if it chose to take such course with its attending consequences. Plaintiff remained in office, and the point is controlled by the general proposition of law that his right to the salary during his term, until legally

removed, was independent of his actual performance of any duties whatever.''

Now did the city act in good faith when it paid the salary to Folk the *de facto* clerk? Undoubtedly it did not. It is enough to condemn the city that knowing the question which of the two claimants was the legal one was then pending in the supreme court, it undertook, on the 11th of May, 1912, to have the appeal dismissed and succeeded in doing so; but that court, on the 21st of May had its attention called to probable injustice, and reinstated the case. Plaintiff notified the city on May 16th that he would file a motion in the supreme court to set aside the dismissal, and this motion was, in fact, filed on May 21st, and the court shortly thereafter decided that plaintiff was the legal claimant. We find that with this action of the city, it, *on the next day* after plaintiff filed his application in the supreme court, paid Folk, the back salary of $1185, in a lump sum. The work for this money had already been performed, the city, as stated above, withholding the salary from both. In the Language of LAMM, J., in Gracey v. St. Louis, supra, the conduct of the city in paying the wrongful claimant ''was the city's affair if it chose to take such course with its attending consequences,'' and the rightful claimant was there held entitled to the salary notwithstanding the payment made to the *de facto* officer.

In view of the pointed ruling of the supreme court in State ex rel. v. Walbridge, and State ex rel. v. Gordon, supra, to the effect that the salary follows the rightful title to an office although the *de jure* officer does not perform the duties; and in view of the ruling we have quoted above from the Gracey case, does it not follow that when the city has notice of the rival claims to the office by the *de jure* and *de facto* officers, especially when the legitimacy of the claims is pending in litigation, it cannot pay the *de facto* claimant and thereby escape payment to the *de jure* officer. The question comes back to the qualifying element of good faith which we have already discussed, and found to be required by our

courts. What right has the city to become the partisan of the wrongful claimant by paying him what is not his, and then set up such conduct as a bar to the action of the rightful claimant for that which is his?

In Jones v. City of Buffalo, 178 N. Y. 45, it was decided that if the City pays the *de facto* officer after notice that he has been *decided* to be the wrongful claimant to the office, it cannot defend against the *de jure* officer's claim for the salary. The case shows, without so stating, that the New York Court heeds the rule of good faith in making the payment which we have shown to be recognized in this and other States. But, with all due regard, we cannot see any difference in the act of the city in paying after notice of the decision and attempting (as in this case) to forestall the decision by paying just previous to its rendition. It will be noticed that it is stated in that decision, as it is in the one to which we shall immediately refer, that the city may protect itself by refusing to pay either, or compelling them to interplead, and we do not see why that protection should not be required of the city, *before,* as well as after the court's decision, if it does not wish to risk a double payment. We think the Supreme Court of Maine, in speaking on the same subject arrives at a more consistent conclusion than the New York Court and bases it on sounder reason.

The case we refer to is Andrews v. Portland, 79 Maine, 484. The court after stating the law as to the rights of a *de jure* and a *de facto* officer as it is stated by our Supreme Court in the foregoing cases, reaches the conclusion in entire harmony with our views. As especially applicable to this case, we quote what that court said at page 490, 491 of the report: "But it is contended by the learned counsel for the defendant that, admitting the foregoing propositions (as to the rights of the two classes of officers) to be well founded, still Decelle was exercising the duties of the office in fact, under color of title upon which the defendant might well act, before his legal right was decided, and

be legally protected in paying the salary to him. We think this contention, when tested by the facts of the case and well established legal principles is unsupported by logic or sound reason. The city had full notice of the plaintiff's claim as the legal officer, and that the title to the office was in litigation. It must be held that it knew that the legal title to the office would draw with it the salary. May it assume to determine the question of legal right between the parties before decided by the court, pay to the one having no legal title, and then successfully set up its action in defense of the claim of the one having the legal right? May A, who holds a fund claimed by B and by C, with full notice of the claim of each, elect to determine between them, and pay to B, who has a prima-facie right, and set up the payment as a defense to the claim of C, who has the legal title? It is perfectly-well settled that he cannot. If he elects it is at his peril. He is not required to do so. He may await an action at law and then bring both claimants into court by bill of interpleader to litigate their title; or he may bring the bill at once without waiting for the commencement of an action at law. Here the city was in no peril. It might have refused to pay to either till the title to the office was determined; or by bill of interpleader, it might have brought the parties into court to litigate their title to the salary. It is well settled tha an office which has attached to it emoluments, has a pecuniary value although primarily it is an agency for public purposes, and that the right to the emoluments follows the legal title to the office. The officer cannot be deprived of his office without due process of law. Can it be, that, while the action of the mayor and aldermen of Portland, in the attempted removal of the plaintiff, was illegal and void as effecting his title to his office, it deprives him of his salary, all that was of pecuniary value to him? Such a contention has no support in well established legal principles.''

To the ame effect is Memphis v. Woodward, 59 Tenn. 499, 503, 504 (12 Heisk).

We have not overlooked the following cases, decided by our Supreme Court, which have been cited by defendant. [State ex rel. v. Draper, 48 Mo. 213; State ex rel. v. Clark, 52 Mo. 508; State ex rel. v. John, 81 Mo. 13 ; Westberg v. City of Kansas, 64 Mo. 493.] We do not regard either of them as presenting the points decisive of this case; but if they did it would be our duty to accept the later cases herein discussed by us.

When it is said that the city did not act in good faith when it paid Folk, it is not meant that the municipal officers took such action with evil or dishonest intent; but that with knowledge of the situation, as we have explained, after having protected itself by with holding the salary from both claimants, it withdrew that protection by assuming to decide in favor of the wrongful claimant, pending a settlement of the controversy by the court.

The judgment is affirmed. All concur.