THE STATE ex rel. WAINWRIGHT-STEEDMAN SPECIAL ROAD DISTRICT, Appellant, v. E. C. HOLMAN et al., Judges of County Court, and J. W. RATEKIN, Treasurer of Callaway County.

Division One, August 27, 1924.

1. **SPECIAL ROAD DISTRICT: Entitled to Taxes Levied Under Section 10682.** A special road district organized under Article VIII of Chapter 98 of Revised Statutes 1919 is entitled to all the road and bridge taxes levied by the county court under Section 10682 and collected from property in the district, and under Section 10838, such taxes, when collected and paid into the county treasury, must be set aside and placed to the credit of the district in which the property was taxable.

2. ———: ———: **Mandamus After Taxes Have Been Spent.** Notwithstanding the statute requires that road and bridge taxes levied upon and collected from property in a special road district, when collected and placed in the county treasury, to be set aside and placed to the credit of said district, mandamus is not available to

State ex rel. Special Road District v. Holman.

compel the county court and treasurer to place such taxes to the credit of the district, if at the time the suit is filed the taxes are not in the treasury, but have been spent and used for other purposes—for the reason that there are no funds the peremptory writ could reach if it were issued.

Headnotes: Highways, 29 C. J. sec. 500.

Appeal from Callaway Circuit Court. —*Hon. David H. Harris,* Judge.

AFFIRMED.

*Baker & Baker* and *Perry S. Rader* for appellant.

(1) A special road district organized and incorporated under the provisions of Article VIII, Chapter 98, Revised Statutes 1919, is entitled to have set aside to and credited to it the net amount of the road taxes levied by the county court under Section 10682, and collected by the county collector from property in the special road district and paid by him into the county treasury. Sec. 10838, R. S. 1919; Carthage Special Rd. Dist. v. Ross, 270 Mo. 76; State ex rel. Monett Special Road Dist. v. Barry County, 302 Mo. 279; Little Prairie Special Rd. Dist. v. Pemiscot Co., 297 Mo. 568. See also: State ex rel. Cameron Special Rd. Dist. v. Everett, 245 Mo. 706; State ex rel. Moberly Special Rd. Dist. v. Burton, 266 Mo. 711; and Sec. 10818, R. S. 1919, in connection with Section 10838. (2) There is no conflict between Sections 10682 and 10838. Section 10682 makes no provision for the distribution of the taxes collected in pursuance to a levy made by authority thereof, but the distribution of all that part of said taxes collected from property in the special road district is controlled by Section 10838, which requires them to be set aside to and placed to the credit of such district. Section 10682 is authority for levying and collecting the taxes; Section 10838 is authority for the application of so much of the general road taxes as is collected from property in the district. The two sections, together with Sections 12866, 12975 and 12976, comple-

ment each other and round out a complete whole. State ex rel. Monett Special Road Dist. v. Barry County, 302 Mo. 279; Carthage Special Rd. Dist. v. Ross, 270 Mo. 76. (3) Section 36 of the Act of 1917, Laws 1917, p. 457, now Sec. 10682, R. S. 1919, did not expressly or impliedly repeal Section 10616 of the Act of 1913, Laws 1913, p. 681, now Sec. 10838, R. S. 1919. Repeals by implication are not favored. There is no irreconcilable conflict between Sections 10682 and 10838, but Section 10838, if there is any conflict at all, is an exception to the general provision of Section 10682 requiring general road taxes collected under the authority thereof to be placed to the credit of the Road and Bridge Fund, in that Section 10838 directs how road taxes collected from property in a special road district is to be applied, and Section 10682 either directs how all general road taxes collected from property lying outside of such special road district is to be applied or leaves it in the county Road and Bridge Fund to be distributed according to the directions of other statutes. McGrew v. Mo. Pac. Ry. Co., 177 Mo. 542; Manker v. Faulhaber, 94 Mo. 439; State ex rel. v. Walbridge, 119 Mo. 389; State ex rel. Philpot v. Ry. Co., 296 Mo. 525; State ex rel. Buchanan County v. Fulks, 296 Mo. 626.

*W. B. Whitlow* and *N. T. Cave* for respondents.

(1) The taxes levied and collected under Section 10682 must go into "the county road and bridge fund." Sec. 10682, R. S. 1919. (2) Section 10682 repeals by implication the provisions of Section 10838, which relates to where the taxes levied and collected under Section 10682 shall go. (3) The road district or its commissioners would not get the 1922 taxes, because before the road district incorporated the court had appointed road overseers in the districts comprising all of this special district, and the road overseers had qualified and given bond and had begun their work before this district was incorporated; and for the further reason that the levy made by the county court was made after the appointment of the road overseers and before the incorporation of the

district, and for that year, 1922, the money would go to the districts which were in existence at the time of the levy, which in this case, would have been to the road overseer district. (4) The commissioners could not claim the taxes for 1922, because those appointed at the time of the organization of the district did not qualify and organize as required by Secs. 10835 and 10836, R. S. 1919. (5) They cannot recover because they sat by and permitted the county court and the road overseers to do the work within the district and to expend all of the money except $420.01, which amount has been delivered to them, and had been at the time of the trial. (6) They cannot recover in this case because they permitted the road overseers and the county court to spend all of the taxes except the $420.01, above referred to, and there is no part of the road taxes for 1922 left with which to pay the amount appellant now claims.

JAMES T. BLAIR, P. J.—In 1923 appellant instituted in the Callaway Circuit Court a proceeding by mandamus to compel the judges of the county court and the county treasurer to transfer to the credit of relator certain revenue derived from road taxes of 1922. The court ordered part of the funds transferred to relator, and refused to make such an order as to others. Relator appealed.

Appellant, hereinafter called relator, is a special road district, organized under Article VIII, Chapter 98, Revised Statutes 1919, and the road taxes claimed are those regularly levied on property in the district under Sections 10682 and 10683, Revised Statutes 1919, for the year 1922. The amount of taxes levied under Section 10682 was $1549.63, and under Section 10683 was $3615.78.

The alternative writ alleges the incorporation of relator and the official character of respondents; that it was the duty of the county court to make levies under Sections 10838, 10682 and 10683, and that at its May, 1922, term, the county court, under Sections 10682 and 10683, levied

on property within relator district taxes aggregating $5165.41 of which, after deducting collector's commissions, the sum of $5113.76 was required to be credited to relator district, subject to its warrant; that relator "made its demand prior to the time any of said money was drawn out or paid out by any of respondents;" that there is "no adequate remedy at law;" and prays that a peremptory writ be awarded commanding respondents to place to relator's credit $5113.76, "or such sum as this court may find may be due this petitioner for the causes and the reasons hereinbefore set out, and for such other," etc.

The return consists, first, of a general denial. It then (1) admits the official character of the county court judges; (2) denies relator is a duly organized road district, and avers "relator has never organized said district and that the same is not now a duly organized" district. It avers (3) that under Section 10838 the county court levied five cents on the $100 valuation on property in the district, in the total sum of $1549.63, and eleven and two-thirds cents on the $100 valuation on the same property under Section 10683, in the total sum of $3615.78; that collector's commissions of $90.38 reduced the aggregate to $5075.03; (4) that prior to February 1, 1922, respondents entered into contracts "with the road overseers in the Wainwright-Steedman Special District and in other parts of Callaway County for all of its anticipated road funds available, February 1, 1923," and that "respondents have expended all of said moneys collected for road work which had been contracted for long prior to the incorporation of relator . . . and that said money having been expended and contracted for as provided by law" respondents had no money, authorized to be turned over to relator, until after February 1, 1923; (5) substantially the same facts as in (4) are then set up "by way of counterclaim;" and, in that connection, it is also averred the county had no road funds available to pay out on the contracts of February 1, 1922, with the road overseers, except the anticipated income from the taxes of 1922, and

that of the taxes collected under the five-cent levy all were paid out on those contracts except $125.41, which sum has been credited to relator. (6) It is then averred that out of the· levy of eleven and two-thirds cents $803.32 were expended on road and bridge work within relator's territory, and credit is asked. for that amount. It is averred (7) there are delinquent taxes, for which credit is asked. (8) It is then denied that any demand was ever made by relator for any of the money in question until after the whole amount collected had been expended, and averred that no demand was ever made until February, 1923, after settlement had been made with some of the owners "who worked territory within the confines of the said special road district." (9) The return proceeds: "Respondents further state that under the law they were entitled to spend their anticipated revenue within one year from the date contracts were entered into, and that the said respondents did enter into contracts and agreements and performed work in anticipation of their taxes available in February, 1923; and in truth and fact respondents have no money which legally belongs to said special road district." (10) It is then averred that relator did no road work during 1922 "and performed none of the functions of a special road district and is not legally entitled to the money asked for at this time." (11) It is finally averred that "there is now on hand no money available for the warrants demanded by the relator and no money available in the hands of the Treasurer of Callaway County out of which the warrants aforesaid can legally be paid if issued."

The reply admits the facts stated in paragraphs (1), (3) and (7) of the return and denies all facts stated in paragraphs (2), (4), (5), (6) and *seven* thereof. It is then alleged that if respondents expended any of the taxes collected on property within relator district, such expenditure was unlawful; that the money should have been turned over to the district; but that relator, nevertheless,

asks that respondents be given credit for all such money of the 1922 road taxes as were in fact expended by respondents for "roads, bridges and culverts" within relator district; but relator is "not willing to allow credit . . . for any sum . . . expended in anticipation of taxes and prior to collection of taxes, as such sums were unlawfully expended." Replying to paragraphs 8 and 9 of the return it is alleged that relator "has frequently made demand upon respondents for the money herein demanded; that three of the respondents were continuously judges of the County Court of Callaway County, Missouri, during and after the May, 1922, term thereof; that this relator was organized and made a corporation entity by and through the orders of these respondents at the May, 1922, term thereof; that, therefore, respondents had both actual and constructive knowledge of the existence of this relator from and after said date, and knew that under the law of this State it had entire control and supervision of the roads, bridges and culverts within its territorial limits, and that all road taxes, general or special, collected after that date were the property and should have been turned over to this relator." In addition, it is alleged that respondents are estopped to deny or question the validity of relator's incorporation, because: (a) by act and order of the county court, then composed of respondents Holman, Moore and Crump, "relator was declared duly and legally incorporated;" (b) that respondents have continued to recognize relator as a special road district and at its February, 1923, term failed and refused to appoint "road overseers with jurisdiction over the territory included within the boundaries of relator;" (c) "respondents have turned over certain moneys and properties to the relator as a special road district duly organized and existing."

The trial court found relator was entitled to the taxes levied under Section 10683, Revised Statutes 1919, and that after crediting delinquent taxes, collector's commissions, sums expended within relator district and $420.01

turned over to the district, there remained a balance due relator out of taxes so levied of $1325.12. The court held relator was entitled to none of the taxes levied under Section 10682. The peremptory writ ordered respondents to pay over to relator $1325.12. Relator alone appealed. The issue here concerns solely the taxes levied under Section 10682.

The evidence showed that on May 2, 1922, at the regular May term, the county court, as was its custom under the law, made the levies of the 1922 taxes involved in this case. On the same day it made an order incorporating relator under Article VIII, Chapter 98, Revised Statutes 1919. It appointed John F. Taylor, W. E. Sitton and F. B. Bryan as commissioners of the district. On September 16, 1922, Sitton took the prescribed oath and filed it with the county clerk. Some time in 1923 Bryan signed the written oath but did not swear to it. Taylor seems to have done nothing about taking an oath as commissioner. Two of the appointees talked with the county judges in June or July, 1922, about district funds, but were told that contracts with road overseers over the county, including those working the district territory, which had been entered into about February 1, 1922, under the law then applicable, would require all the road and bridge taxes for the year and that no funds would be available for the district until in 1923. The first commissioners were appointed to serve until the first Tuesday after the first Monday in January, 1923, and in January, 1923, new commissioners were elected for the district. Some time thereafter the commissioners orally asked the court to order the 1922 taxes credited to the district, and in March, 1923, a written request or demand was made. The court refused to make a transfer. On the issue as to the funds in the hands of the county court and treasurer out of which the sums asked could be paid, one of the county judges testified that all the money arising from the levies in 1922 under Sections 10682 and 10683 had been paid out to the overseers for work done in 1922 except the

$420.01 turned over to the relator. Relator objected to this testimony as to the levy under Section 10683 on the ground that the treasurer's books were the best evidence. According to the witness, the deficit in the special road and bridge funds in May, 1922, was over $15,000. This doubtless included the obligations under contracts made with road overseers in February, 1922, before the application to incorporate relator was filed in March. He said the money was nearly all paid out on road warrants as it came in; that there was nothing then in either fund. There was no testimony to the contrary.

. I. The controversy in this court concerns, solely, taxes levied under Section 10682, Revised Statutes 1919, as amended, Laws 1921, First Ex. Sess. p. 172. That section, as amended, reads: ''The county courts in the several counties of this State, having a population of less than 250,000 inhabitants, at the May term thereof in each year, shall levy upon all real and personal property made taxable by law a tax of not more than twenty cents on the $100 valuation as a road tax, which levy shall be collected and paid into the county treasury as other revenue and shall be placed to the credit of the 'county road and bridge fund.' '' Relator contends that Section 10838, Revised Statutes 1919, which is part of the act under which relator was organized, and which was enacted in 1913, requires the taxes levied under Section 10682 to be carried to the credit of districts like relator in so far as those taxes are derived from property within such districts. Section 10838 provides, among other things, that the county courts ''shall levy on the property taxable in'' districts organized as relator is organized ''such taxes as may be levied by the authority of Section 10682 in district not incorporated, and such taxes when so collected shall be set aside to and placed to the credit of the district in which the property was taxable . . . All revenue so set aside and placed to the credit of such incorporated

*Road Taxes Levied Under Section 10682.*

district shall be used by the commissioners thereof for" road work within the district. The argument of respondents, with relation to these statutes, is based upon the history of the legislation. It is contended that enactment of Section 36 of the Act of April 9, 1917, Laws 1917, p. 457, which is Section 10682, Revised Statutes 1919, so changed the section as to indicate a legislative intent to deprive special districts of taxes levied under that section on property within such districts. In the case of State ex rel. Monett Special Road District v. Barry County, 302 Mo. 279, 258 S. W. 710, which was decided after the judgment in this case, will be found a discussion and decision of practically identical questions raised in connection with Sections 10682 and 10818, Revised Statutes 1919. While the district involved in that case was organized under Article VII of the Road Law, there is no difference between the operative words of Section 10838 and Section 10818 which would permit a different conclusion in this case. That decision fully disposes of the first question in this case. A district organized and operating under Article VIII of Chapter 98 is entitled to have all taxes collected under Section 10682 from property in such district "set aside and placed to the credit of the district in which the property was taxable."

II. It seems respondents rely with more confidence upon other propositions. Among these it is urged there are no funds which can lawfully be "set aside and placed to the credit" of relator as is prayed. The alternative writ does not specifically allege that any part of the taxes involved in this case was in the county treasury at the time this proceeding was begun. It does state that the taxes had been collected in due course and "it made its demand prior to the time any of said money was drawn out or paid out by any of the respondents."

Mandamus.

The return alleges the money was all expended on contracts entered into with road overseers before relator's incorporation. This was denied. Paragraph 11 of the

Vol. 305]          APRIL TERM, 1924.          205

State ex rel. Special Road District v. Holman.

return avers there is no money in the hands of the county treasurer "out of which the warrants aforesaid legally can be paid if issued." This is not denied. In its statement relator says that in 1922 the county court had used the school money to the amount of $15,000 to "buy road warrants" and had used the 1922 road taxes "as they came in to replace the school moneys so used," so that the court "did not have the bulk of the road and bridge taxes on hand at the time the commissioners . . . in February, 1923, demanded so much of such taxes as had not been used to pay road overseers for the work they had done within the district since May," 1922. In their brief respondents insist that all the 1922 road and bridge money collected under Sections 10682 and 10683 was expended by the court or the road overseers except the $420.01 turned over to relator. It is then contended that these expenditures were made with the knowledge and acquiescence of relator's commissioners and that they "cannot now compel the county court to go into some other revenue fund and take therefrom $1522.25 and reimburse the commissioners."

This particular statement of the issues, facts and contentions in the briefs is made because relator in a reply brief earnestly insists the question of "no funds" was never raised until in the oral argument in this court. That is out of accord with the record. The pleadings and relator's brief admit the fact for the purposes of this case, and it could not well be otherwise under the evidence. Mandamus will not lie in a case like this except to compel the performance of a specific and unequivocal legal duty owing from respondents to relator, to the performance of which relator has a clear right. The road taxes of 1922 to which relator was entitled under Section 10682 were disbursed by the county court and were not credited to relator on the treasurer's books. The 1922 funds collected are not in the county treasury. Payment cannot be made out of 1923 road taxes collected under Sections 10682 and 10683 because relator is entitled to them with-

out regard to what became of the taxes of 1922. They cannot be paid out of any other funds for any other year unless it should happen that current expenses for that year were such as to leave an unexpended balance available for purposes other than the current annual expenditures—a thing neither alleged nor proved. The fact that there are no funds the peremptory writ could reach if issued makes it necessary to refuse that writ. The authorities are numerous. [State ex rel. Hemmerla v. Newburg Special Road District of Phelps County, 217 S. W. 605; State ex rel. v. Brown, 141 Mo. l. c. 27, 28; Holloway to use v. Howell County, 240 Mo. l. c. 612, 613; State ex rel. v. Macon County Court, 68 Mo. 29; Twp. Bd. of Education v. Boyd, 58 Mo. l. c. 276; Mattox v. Bd. of Education, 148 Ga. 577; 2 Bailey on Habeas Corpus and Other Writs, p. 819; 18 R. C. L. pp. 139, 140, sec. 55; High on Extraordinary Remedies, secs. 114, 117, pp. 118, 121.] Even though it be assumed that the disbursement of the fund was not authorized, the rule still would apply. It is the fact that there are no funds the writ could act upon which requires the conclusion reached.

Whether there is another remedy against the county is a question not presented for decision.

The judgment is affirmed. All concur.