BILLINGS SPECIAL ROAD DISTRICT v. CHRISTIAN COUNTY, Appellant. —5 S. W. (2d) 378.

Division One, April 11, 1928.

*Omer E. Brown* for appellant.

*Page & Barrett* for respondent.

LINDSAY, C.—This is a suit by a special road district to recover moneys alleged to have been collected as taxes for road and bridge purposes upon property within the district.

The first count asks judgment for moneys collected for the year 1922, and is as follows:

"Plaintiff states that it is and was at all times herein mentioned a special road district of Christian County, Missouri, organized and existing under Article 7 of Chapter 98 of the Revised Statutes of Missouri, 1919, and that the defendant is a political subdivision of the State of Missouri and are capable of suing and being sued as such.

"Plaintiff for its first count and cause of action herein, states that the defendant, by and through its duly constituted officers, at the regular May term, 1922, by its order duly entered of record, levied and caused to be levied on all property, real, personal, and mixed, in Christian County, Missouri, a tax for the year 1922 of ten cents on the $100 valuation, and designated said levy as the 'Bridge Tax Levy' and that the said Christian County collected and caused to be collected said taxes pursuant to said levy.

"Plaintiff further states that under and by virtue of said levy there was collected by the defendant county upon property within

the Billings Special Road District of Christian County, Missouri, the sum of $1480.06; that timely claim, requisition, and demand for said sum of money was duly and properly made in writing by the commissioners of the Billings Special Road District of Christian County, Missouri, and that the said defendant county has ever failed, neglected, and refused to honor said requisition and demand and to issue. a warrant in payment of the funds derived from the levy aforesaid on property within the Billings Special Road District of Christian County, Missouri.

"Plaintiff further states that the defendant county, disregarding the demands and requisitions aforesaid, has spent, diverted, and dissipated said funds, and that the same are not now where they may be lawfully distributed.

"Wherefore, plaintiff prays judgment against the defendant in the sum of $1480.06, and its costs herein expended, and interest from the date of demand."

The second count is for moneys collected in the year 1923, in the sum of $1368, and is in the same form as the first count.

The defendant, after the overruling of its demurrer to the petition, filed answer, which is as follows:

"Comes now the defendant and for answer to the petition of the plaintiff says that:

"1. That the plaintiff herein has no legal capacity to sue the defendant for the tax alleged in the petition, and further says that the tax so levied was unconstitutional and that the tax designated as the 'Bridge Tax Levy' is extraneous of the amount of taxes due any special road district by law. Defendant further states that the tax collected or the revenue derived therefrom has been expended by this and the county court preceding on the bridges of Christian County at the discretion of the court.

"2. Defendant further answering says in answer to the plaintiff's petition, alleging that before this action was brought and after said cause of action accrued, if any, this defendant through its duly constituted officers delivered to the plaintiff, who accepted the same, twenty-five cents on every hundred dollars of valuation within said Special Road District, being the fifteen-cent tax and the ten-cent tax both together, of value in full satisfaction and discharge of the amount of the money due the Special Road District aforesaid by this defendant county.

"3. Defendant further answering states that the revenue for which this suit is brought was collected and expended in the years 1922 and 1923, and that same was never legally demanded, or, no protests were ever filed in years the tax was collected and expended and that now these plaintiffs are estopped from the allegations in their petitions.

"And now having fully answered the defendants herein pray to be discharged with their costs."

The reply was a general denial. The plaintiff had judgment on both counts of the petition and defendant was allowed an appeal. Preliminary to a discussion of the merits, counsel for respondent in their brief contend that appellant makes no assignment of errors; that there is no bill of exceptions; that there is no motion for a new trial set out in a bill of exceptions, and that there is no index to appellant's abstract. There is no assignment of errors, and there is no index to the abstract of appellant, which intermingles statements of matters of record, and of exception, points and authorities, testimony in narrative form, and a printed argument.

The appeal is not here under the ordinary short form of transcript authorized by Section 1479, Revised Statutes 1919; nor is there a complete transcript. The appellant has filed here a typewritten transcript of all record entries, beginning with the entry showing the filing of defendant's answer and ending with the entry showing that within the time allowed, its bill of exceptions was duly signed by the trial judge, and filed and made part of the record. The transcript closes with this entry and does not set forth the bill of exceptions. There is no proper abstract of the record. The commingled abstract and brief filed by appellant opens with a statement of the nature and purpose of the suit, and statement of certain facts not found in the record, and gives certain reasons why defendant is objecting to the payment of the sums asked. The abstract then begins with statement of the filing of the petition, and the petition is set forth; then states the filing of a demurrer to the petition, its overruling, and filing of defendant's answer, which is set forth, and filing of plaintiff's reply. It then states that evidence was heard, and the defendant interposed a demurrer to the evidence, which was overruled, and that exceptions to the ruling of the court were then and there saved. Then follows statement of the entry of judgment, followed by a statement that on the same day defendant filed motion for a new trial, and the motion is set out; that the motion was overruled and defendant saved exceptions; that on the same day defendant filed a motion in arrest, which was overruled and exceptions saved; and, on the same day, affidavit for appeal filed and appeal granted. There then follows the statement that the bill of exceptions was filed, was properly signed and sealed and made a part of the record. Following that, under the head "Points and Authorities" are certain statements with citations of authorities thereunder. Thereafter, next following, is the brief statement in narrative form of the testimony of three witnesses. Embodied in the statement of the first one is an exhibit, a written demand upon the county court by the board of commissioners of the

road district, for a warrant for the funds in the hands of the County Treasurer. Following the statement in narrative form of the testimony of the witnesses, is a short printed argument.

Counsel for defendant urge that there is no bill of exceptions and that the only question is whether or not the judgment is such as could have been entered upon the issues made by the pleadings. It is contended that since the bill of exceptions must be signed by the trial judge, the setting out in the record proper that it was so signed, is not sufficient. Cooper v. Maloney, 162 Mo. 684, and State v. Watts, 248 Mo. 494, are cited. Those cases are not pertinent or controlling, in the particular situation here presented, under the ruling of this court, en banc, in State ex rel. v. Trimble, 291 Mo. 532. Under that ruling the statement that the bill of exceptions was filed, signed and made part of the record is sufficient as to the fact that there was a bill of exceptions which was signed by the trial judge; but the trouble with appellant's abstract here is that it does not abstract the bill of exceptions itself. It does not purport to abstract a bill of exceptions which contains the motions for a new trial and in arrest overruled and excepted to; nor does it even contain the statement that the short narrative of the testimony of the three witnesses is embodied in a bill of exceptions. In State ex rel. v. Trimble, supra, reference was made to the dissenting opinion of TRIMBLE, J., in Williams v. Kansas City Terminal Railway Co., 223 S. W. l. c. 134, etc., which, it was said, reached correct conclusions upon a record similar to that then under consideration by this court. Judge TRIMBLE observed that a document consisting of matters of exception, taken during the progress of a case, does not become a bill of exceptions until it is signed by the judge, but that where the abstract of the record proper shows that this has been done, the copying of his signature into the abstract of the bill is not necessary to show that the bill has been signed. He then added, l. c. 134: "It is no doubt true that, even if the abstract of the record proper does recite that the bill was signed and filed, yet, if such abstract of the record proper is not followed by any abstract of the bill of exceptions, the appellate court cannot consider matters of exception, but this would be because no abstract of the bill had been presented to the court in the printed abstract, and not because the bill itself was not shown to have been signed." In this case the abstract, and transcript as well, sufficiently assert the signing of a bill of exceptions and its filing; but appellant has failed to abstract the bill of exceptions.

Under the provisions of Section 1479, Revised Statutes 1919, the appellant is required to "file printed abstracts of the entire record" of the cause. The bill of exceptions becomes, and is, a part of the record by virtue of the order of the court. By our Rule 13, such abstract must "set forth so much of the record as is necessary to a

complete understanding of all the questions presented for decision,'' and ''so much of the record as is necessary to be consulted in the disposition of assigned errors.'' There are no assignments of error in appellant's brief. In the combined abstract and brief before us, there is inserted between the statement, that the bill of exceptions was filed and signed and made a part of the record, and the short narrative of the testimony of three witnesses, what is designated, as ''points and authorities'' as follows:

''POINTS AND AUTHORITIES.

''Where money derived from a special tax in a special road district is not demanded in the year levied, held district is not entitled to it. Little Prairie Special Road District v. Pemiscot County, 249 S. W. 1. c. 600-601.

''Must allege right for the thing used for. 205 Mo. 589; 206 Mo. 334.

''Plaintiff states himself out of court in his petition by alleging that the money is spent for the years 1922 and 1923. Kansas City Railway Company v. Thornton, 152 Mo. 570, 247 S. W. p. 182.

''Road district cannot demand more than twenty-five cents and notice for any more than that would be void as to that part. Laws 1913, p. 675, sec. 1, Entitled, 'Funds to be used in Special Districts—apportionment.' These notices demand twenty-five-cent levy as per Section 1, Laws 1913, p. 675. Hence no notice is made for the ten-cent unconstitutional levy. Laws 1913, p. 675.''

Counsel for respondent have not asked dismissal of the appeal, but insist that nothing is to be considered but the record proper and ask affirmance thereon.

The action is one brought on the theory the county received and spent money collected for the use of the district, and is liable therefor. It is conceded by counsel for respondent that since the fund sued for has been used by the county, and no longer exists, mandamus will not lie to compel the issuance of a warrant for its payment. Such was the ruling in State ex rel. Wainwright-Steedman Special Road District v. Holman, 305 Mo. 195, 264 S. W. 908. It was there held that even if the disbursement of the fund was unauthorized, the rule would be the same; that the fact there were no funds on which the writ could act, required that conclusion. The opinion closes with the statement that whether there was another remedy against the county, was a question not presented for decision. In that case there had been no timely demand for the funds, except perhaps as to a part for one year. In this case, the petition alleges timely application was made by the district, and the answer, heretofore set out, contains no general denial; but, there is a qualified denial in the third paragraph. The reply is a general denial. The

second paragraph of the answer alleges delivery to the district and acceptance by it of "twenty-five cents on every hundred dollars of valuation, . . . being the fifteen-cent tax and the ten-cent tax both together, of value in full satisfaction and discharge of the amount due." The third paragraph of the answer sets up the defense that the revenue for which the suit was brought was collected and expended in the years 1922 and 1923, and that the same was never demanded, and no protests were filed in the years the taxes were collected and expended, and the district was estopped. In the narrative statement of the testimony of Mr. Farmer, the county clerk, set out by appellant, but not referred to as in the bill of exceptions, there is embodied a written application given him in August, 1922, "for funds now in the hands of the County Treasurer belonging to Billings Special Road District and 'from whatever source derived." The testimony of the County Clerk as so set out, was that he paid to the district "the full twenty-five cent road and bridge tax, which was held in State ex rel. Monett Special Road District v. Barry County, 258 S. W. 710, to belong to such road districts, but that no other form of requisition was ever presented for the ten-cent levy." However, respondent in an additional abstract has set out, as introduced in evidence and included in the bill of exceptions, three other written applications dated respectively March 3, 1923, November 30, 1923, and January 29, 1924, each being an application "for all funds now in the hands of the County Treasurer, belonging to said Billings Special Road District and from whatever source derived," and each bearing a notation of amounts paid thereon, and dates of payments. The County Clerk testified that the money expended for the years 1922 and 1923, which was derived from the ten-cent levy, was spent by the county court for bridges and culverts all over the county. There is also a short narrative of the testimony of the County Treasurer quoted as having testified that the "money was expended which was derived from the ten-cent unconstitutional levy," and that he presented books to show it was expended; but that "during the year 1924 there was some $3500 in the treasury on account of the road-and-bridge fund about the time the attorneys made demand for the special ten-cent tax." He is further quoted as saying the attorneys tried to prevent the paying of this money to a contractor for the building of a bridge in 1924 at a named place in the county. The only other testimony shown is stated as follows: "J. B. Burghaus, a clerk of the Special Road District, testified that it was his understanding that the notice set out and identified by Mr. Farmer included the ten-cent tax, but admitted that no other requisition was ever made either orally or in writing during the years 1922 and 1923 for the special ten-cent tax."

In what is termed a "statement," which precedes and introduces the abstract and brief, appellant states that Christian County "by reason of its population" is in the class of counties which may levy not in excess of forty cents for county purposes," and that such amount was levied, and also twenty-five cents levied "for road-and-bridge purposes, making a total amount of levy which was constitutional, sixty-five cents on the one hundred dollars' valuation." There follows the further statement: "The question in this lawsuit is over a ten-cent unconstitutional levy, over and above the sixty-five-cent constitutional levy." He further says: "It is admitted by both plaintiff and defendant that the ten-cent levy is unconstitutional." It cannot be determined from this record what was the total of the levies, nor what was the total of the levies for road or for road and bridge purposes. Counsel for respondent make no admission in their briefs that this particular levy is unconstitutiontal—make no reference at all to the question of constitutionality. The total assessed valuation of the property of the county is not alleged.

The first paragraph of defendant's answer, as has been seen, alleges that the tax so levied was unconstitutional, and that "the tax designated as the 'Bridge Tax Levy' is extraneous of the amount of taxes and any special road district by law." Neither petition nor answer state facts, nor do they appear in the record, from which the constitutional validity of the ten-cent tax, designated as the "bridge Tax Levy" can be determined. There is nothing to show what levy was made under Section 10682 as amended. [Laws 1921, Ex. Sess., p. 172.] As amended, that section authorized in counties having a population of less than two hundred and fifty thousand inhabitants, a levy of not more than twenty cents on the one hundred dollars' valuation. The prior provision making mandatory a levy of not less than ten cents was eliminated.

There is no allegation as to what levy was made under the provisions of Section 10683, permitting county courts, in their discretion, to levy and collect a special tax, not exceeding twenty-five cents on each one-hundred-dollar valuation to be used for "road and bridge purposes," and for no other purpose. Section 10683 requires this special tax collected on property within a special road district shall be paid into the county treasury, and "placed to the credit" of the district and paid out upon warrants of the county court in favor of the commissioners of such district. Section 10682 makes no direction as to the distribution of the money collected under its provisions. However, in State ex rel. v. Barry County, 302 Mo. 279, it was held that, while Section 10682 made no provision for distribution of the taxes collected thereunder, yet, under the provisions of Section 10818, applicable to special road districts, it is required that all taxes for

road and bridge purposes collected by virtue of any existing law, or any subsequent law thereafter enacted, upon property within a special road district, "shall be set aside. to the credit of such district to be paid to the treasurer of such district, upon written application of the commissioners of such district." The county court is required, as such taxes are paid and collected, to apportion and set them aside to the credit of the district. The decision in that case is adverse to the contention and allegation of respondent that "the tax designated as the 'bridge tax levy' is extraneous of the amount of taxes due any special road district by law;" if by that language, counsel means it was "extraneous" because it was a tax levied under the provision of Section 10682. If he means the particular tax here in issue was an unconstitutional tax, because levied in excess of the amount authorized by Section 12865 (Constitution, Sec. 11, Art. X), or, making a total levy for general purposes in excess of forty cents on the one hundred dollars' valuation, such facts should have been alleged and shown so that its unconstitutional character would have appeared.

The parties, by their pleadings, agree upon the one thing, that the money sued for, collected under a ten-cent levy, designated as a "Bridge Tax Levy," a levy not otherwise defined so as to identify it, had been expended by the county court. Respondent alleges timely application was made, and appellant impliedly admits an application was made, in stating that there was a payment of the funds derived from the twenty-five cent levy.

We have set out practically everything that appears in what may be termed the abstract and brief of appellant. The issue here must be determined upon the record proper, and upon the theory that timely application was made for the funds sued for. If the little testimony that is set out, be considered, there is no evidence to show that the officials of the district knew that it was not being paid all of the funds due to it, during the time the payments were being made. Charging the officials with knowledge of the law that the district was entitled to all the taxes collected on property within the district for road and bridge purposes, there is nothing to show when they learned they had received only a part. They were demanding all. It is not a case where they made no demand before the fund was spent, or demanded only a part; and meantime, the county court might presume the district was intending to forego. all or a part; and relying thereon, contracted obligations. The obligations here were contracted in the face of applications for the fund. The inference is that the county court did not, as required by Section 10818, and as the tax in issue was paid and collected, apportion and set it aside to the credit of the district; but, from the beginning appropriated that fund to the use of the county.

In 15 Corpus Juris, page 581, section 283, it is said: "The revenues of a county are not the property of the county in the sense in which the revenue of a private person or corporation is regarded. A county being a public corporation existing only for public purposes connected with the administration of a state government, its revenue is subject to the control of the Legislature, and when the Legislature directs the application of a revenue to a particular purpose, or its payment to any party, a duty is imposed and an obligation created on the county."

Among the cases cited in support of that utterance is Hannibal v. Marion County, 69 Mo. 571. A suit by the city for recovery of money, a share of the county taxes—the sum of certain taxes paid to the county, levied upon the property within the city. The nature of the claim is stated in the opinion at page 576: "The meaning of the law seems to be simply this: The city of Hannibal, at its own expense, is to provide money to keep up roads, bridges, etc., within its limits, and support its own poor, and to be exempted from taxation to keep up roads and bridges outside of its limits, and to be exempted from the support of the poor in the county outside of its limits. To effect this, as the city had to pay the general county tax, part of which was for these purposes, and there was no special poor tax or special bridge tax, the law declared, that the county should pay over to the city all the revenue derived from general taxation which was not applied to these objects outside of the city limits. To ascertain the sum due the city on this theory, the county was required to pay to the treasurer of the city a sum which should bear the same proportion to the amount expended by the county as the assessment value of all property subject to county taxation in the city should bear to the assessed value of similar property in the remainder of the county. In other words, that the county should pay back to the city, out of the general revenue, the sum collected from the city for bridge tax and poor tax. The object and effect of this law was, to provide for the disbursement of taxes already assessed, levied and collected; and this disbursement was designed to return to the city of Hannibal the taxes collected from its citizens for bridges, roads and the support of the poor, in the county outside of the city, the burthen of supporting their own poor and building their own bridges having been already imposed on the city. Whether such a law operated justly or unjustly is not a matter for judicial determination, as this court held in Hamilton v. St. Louis County Court, 15 Mo. 5, and State ex rel. Police Com. v. County Court of St. Louis County, 34 Mo. 546. Nor does the case of Wells v. City of Weston, 22 Mo. 384, conflict with these decisions. In that case the question was as to the power of the Legislature to authorize taxation for local purposes of lands lying outside of the municipality which levied the tax. Here, the question is as to

the power of the Legislature to direct a disbursement of taxes collected; and an examination of the two cases referred to in the 15th and 34th volumes of our reports seems to render any additional investigation into this question superfluous. It was held in both these cases, that the Legislature had full power to direct what should be done with the taxes levied and collected from any county. We see no injustice in the provision now under consideration, but that is not a matter for our consideration. It is simply a question of power, and as all the constitutional provisions now relied on were examined and discussed in the two cases above referred to and declared to be inapplicable, we consider the question of power as settled.''

The judgment in favor of the county was reversed and remanded. The question of timely demand was not an issue in the cause, but the case sustains the contention that ''the county should pay back to the city out of the general revenue the sum collected from the city for bridge tax and poor tax.'' This case, in substance, is one where under legislative sanction and direction, one public corporation or quasi-corporation, the county, collects taxes, which, as collected, it is required through its administrative officers to set aside and place to the credit of another quasi-public corporation, and to pay it out upon written application. The suit is by the district, the real party in interest, and capable of suing in its own name. [Sec. 10801.] If it be conceded, as it must, that timely application for all funds was made, we see no escape from the conclusion that the county must respond for the funds so collected and used by it.

In Holloway to use v. Howell County, 240 Mo. 601, the suit was in equity, and for an accounting. Funds had been collected for several years and no application for them had been made. It was said, at page 612: ''If such application had been made in this case and refused, we do not say the district could have sued in equity as here, but we do say it might have had timely legal remedy by mandamus or otherwise.'' The action here is one at law for money had and received. It was brought on April 22, 1924, and under what appears we cannot say it was not timely brought. The judgment is therefore affirmed. *Seddon* and *Ellison, CC.,* concur.

PER CURIAM:—The foregoing opinion by LINDSAY, C., is adopted as the opinion of the court. All of the judges concur.