STATE of Missouri ex rel. George W. VOSS-BRINK, Paul A. Hale, J. L. Atkinson, Nannie Jenkins, Roger Smith, H. C. Holt and Elmo Ingenthron, Respondents.

v.

Milton CARPENTER, Treasurer of the State of Missouri, Charles D. Trigg, Comptroller and Director of the Budget of the State of Missouri, Hubert Wheeler, Commissioner of Education, and Mrs. True Davis, Elston Melton, Louis W. Menk, Warren Head, T. A. Haggard, Charles F. Lampkin, Jack Webster, Francis Harriet Williams, Members of the State Board of Education, Appellants.

George W. VOSSBRINK, Paul A. Hale, J. L. Atkinson, Nannie Jenkins, Roger Smith, H. C. Holt, Elmo Ingenthron, Ben Frieberger, Donald Stewart and Carroll McCubbin, Respondents,

v.

Milton CARPENTER, Treasurer of the State of Missouri, Charles D. Trigg, Comptroller and Director of the Budget of the State of Missouri, Hubert Wheeler, Commissioner of Education, and Mrs. True Davis, Elston Melton, Louis W. Menk, Warren Head, T. A. Haggard, Charles F. Lampkin, Jack Webster, Francis Harriet Williams, Members of the State Board of Education, Appellants.

Nos. 50215, 50216.

Supreme Court of Missouri,

En Banc.

March 8, 1965.

Rehearing Denied April 12, 1965.

Thomas F. Eagleton, Atty. Gen., Joseph Nessenfeld, Asst. Atty. Gen., Jefferson City, for appellants.

Warren D. Welliver, Terence C. Porter, Columbia, Welliver, Porter & Cleaveland, Columbia, of counsel, for respondents.

BARRETT, Commissioner.

In this appeal two separately instituted actions, one for a declaratory judgment and the other in mandamus, have been consolidated for all purposes. The ten plaintiff-relators are the duly elected superintendents of schools of their respective counties: Vossbrink, St. Louis County, Hale, Greene County, Atkinson, Lafayette County, Jenkins, Hickory County, Smith, Cole County, Holt, DeKalb County, Ingenthron, Taney County, Frieberger, Callaway County, Stewart, Cass County, and McCubbin, Miller County. The defendant-respondents are the State Treasurer, the Comptroller, the Commissioner of Education and the members of the State Board of Education.

In addition to their regular salaries as superintendents of schools, the statutes relating to county superintendents provide that they shall also receive certain additional sums, depending in some instances on the class county, "as supervisor of school transportation" and for the preparation of "a detailed budget of estimated receipts and disbursements." Sections 167.050–167.260 RSMo 1959, V.A.M.S. The General Assembly has appropriated the necessary funds for the support and maintenance of the public schools of the state but by reason of an Attorney General's opinion and a recommendation or determination of the Commissioner of Education, since April 1961, the State Board of Education, the State Treasurer and the State Comptroller have refused to perform their functions and certify and disburse to the ten counties represented by these plaintiff-superintendents the funds necessary for the payment of these two items of additional compensation. Consequently, as stated, the superintendents in-

stituted these two actions for a declaration of rights and to compel the certification and transfer of funds. Except for Mr. Frieberger whose special case requires separate consideration, the defendant-respondents made the same general answer and response to the plaintiffs' claims, in substance that there are no common school districts in these ten counties, hence, there are no duties for these ten superintendents to perform as supervisors of school transportation or with respect to school budgets and therefore it was asserted they were not entitled to compensation for these nonexistent duties and functions. In addition to a denial of the claims of the plaintiffs the defendant-respondents filed a counterclaim in which they sought to recover the sums previously paid the plaintiffs for these particular duties.

The cases were submitted on stipulated or agreed facts, from the defendant-appellants' standpoint the most important fact being, at least in most of the counties, that there were no common school districts (presumably all districts have been consolidated) and that in these counties there are town or city districts employing a school superintendent who devotes at least one half his time to the direct work of supervision. The court found the issues in favor of the plaintiffs in detail, it is not necessary here however to set forth the judgment and decree in full. The essence of the court's view which obviously is the crux of the case is illustrated by this quotation from the judgment: "the Legislature of the State of Missouri has enacted no provision which abolishes the office of County Superintendent of Schools or withdraws the contribution made by the State of Missouri to the counties for compensation of County Superintendent or provides that the salary of County Superintendent of Schools ceases on accomplishment of complete reorganization of the schools of the county, or abolishes the function of acting as supervisor of school transportation or abolishes the function of preparing a detailed budget for each school district under the County Superintendent's supervision, either expressly or by implication, or by virtue of the accomplishment of complete reorganization of the schools of a county."

It was stipulated that Cole, DeKalb and Taney counties each contained school districts whose superintendents devoted less than half their time to the direct work of supervision and so, quoting from the defendant-appellants' brief, "Smith, Holt and Ingenthron (superintendents in those three counties) have been and still are receiving compensation for the preparation of the budget for each school district under his supervision. There is no controversy with respect to their respective rights thereto." It also appears from the pleadings of the parties that three of the superintendents, Stewart (Cass County), McCubbin (Miller County) and Frieberger (Callaway County), do not fall in the categories relied on by the appellant and unless Frieberger is disqualified for another reason these three parties are admittedly entitled to compensation for bus and budget supervision. These tacit or plainly admitted concessions serve to sharply point up the only meritorious issues involved on the appeal. The defendant-respondents have briefed and argued five principal points but in their essentials three of the points are but another way of presenting the same problem as is indicated by their citation of the same authorities under all three points. It will suffice to present their contentions against the judgment and decree to extract two or three quotations from their brief: "The Court erred in failing to find and declare that Sections 167.050 and 167.060, RSMo [V.A. M.S.], do not require or permit defendants to disburse or expend out of funds appropriated for the support and maintenance of public schools or otherwise any money to be used as compensation of county superintendents of schools as supervisors of school transportation in *counties which have no common school districts and in which by reason thereof there is no school transportation established by such districts and the county superintendents of schools in*

*said counties cannot and do not perform any duties as supervisor of school transporta- tion."* (Emphasis supplied.) "Plaintiffs were lawfully relieved of the duty of acting as supervisor of school transportation in the counties in which they are acting as county superintendent of schools by the lawful elimination of all common school districts in said counties and therefore are not en- titled to and may not be paid compensation for the duties of which they were lawfully relieved." Or, as to their budget functions and compensation, "The Court erred in failing to find and declare that Sections 167.130, 167.160, 167.200 and 167.240, RSMo [V.A.M.S.], do not require or permit de- fendants to disburse or expend out of funds appropriated for the support and mainte- nance of public schools or otherwise any money to be used as compensation of county superintendents of schools for preparation of school budgets in counties in which there are no schools under the supervision of the county superintendent of schools and in which by reason thereof the county super- intendent of schools in said counties cannot and does not perform any duties in con- nection with preparation of school budgets."

■ In support of their respective claims the parties have invoked the general rules of statutory construction but the auxiliary rules are of but limited persuasive force in compelling a conclusion. Perhaps it should suffice to say that this court agrees with the trial court's conclusion and disposition of the cause but it is necessary in response to the appeal to indicate certain reasons and factors convincingly supporting the judg- ment and decree. In the first place, the state's appropriations for the support of free public schools *"shall be* paid at least annually and *distributed according to law."* Const.Mo. Art. IX, Sec. 3, V.A.M.S. The counties have not been made parties to this action, but the tenor of all the statutes in- volved in these proceedings is that funds appropriated by the General Assembly are to be distributed to the counties and paid out by them through their local officials, not

the state treasurer or comptroller. *"The several counties of this state shall receive funds from the state of Missouri* to be used as compensation of county superintendents of schools as supervisors of school trans- portation as follows." Section 167.060 RS Mo 1959, V.A.M.S. As to the budget in certain class counties, "The state of Mis- souri shall pay annually to each county of the second class six hundred dollars, pursu- ant to an appropriation out of moneys regu- larly appropriated and set aside for the sup- port of the free public schools." Sections 167.160(2), 167.200(2) RSMo 1959, V.A.M. S. And again as to bus supervision, "The county treasurers of such counties shall pay over such compensation monthly, out of funds received by said county treasurers from the state of Missouri for the purpose of compensating county superintendents of schools for their duties as supervisors of school transportation, at the same time they pay the county superintendent of schools his salary for the performance of his other duties." Section 167.180 RSMo 1959, V.A. M.S. As to third and fourth class coun- ties: *"The state of Missouri shall appro- priate annually,* out of the general revenue fund of state of Missouri, four hundred dollars *to each and every county of the third class."* Sections 167.210, 167.240(2), 167.260 RSMo 1959, V.A.M.S. Thus plain- ly the legislature has entrusted the counties, the local level in school administration, with the function and business of distributing the funds appropriated for supervision of trans- portation and budget preparation. From the general tenor of these statutes it is the function of the appellants to distribute these funds to the counties.

■ In the second place, as bearing on the judgment here, there is no claim that these superintendents have abandoned their office, and "the fact that he does not per- form all or any of its duties will not affect his right to the salary attached thereto un- less a statute otherwise provides." Ann. Cas.1918B, p. 435; Coleman v. Kansas City, 351 Mo. 254, 173 S.W.2d 572; Luth v. Kan-

sas City, 203 Mo.App. 110, 218 S.W. 901, 902. If, as it must be conceded, the sums involved here are salary "the annual amount of such salary (county judge) is fixed by the Legislature and no other officer or officers have authority to change it, either before or after it is due and payable." Gill v. Buchanan County, 346 Mo. 599, 605, 142 S.W.2d 665, 668. The General Assembly could have attached conditions to the superintendents' right to receive additional compensation but it did not do so. One of the conditions could have been that there were or must have been common school districts with budget and transportation problems. This principle is best illustrated by a leading banc decision involving the salary of the State Superintendent of Schools, State ex rel. Evans v. Gordon, 245 Mo. 12, 149 S.W. 638. In that case there was an election contest and for the period of the contest the State Auditor refused to pay the duly elected superintendent his salary. But a statute then provided that in the event of an election contest "then no warrant shall be drawn by the auditor, or paid by the treasurer, for the salary by law attached to said office, until the right to the same shall be legally determined." The court said, "the compensation payable to the office which relator is holding in possession was made subject to the condition that it should not be paid pending a contest for the office. Relator accepted the office with knowledge of this condition." And as against the claim of unfairness, public policy and the depriving "a man of the just reward for his labor," the court made the observation that "This argument could appropriately be made to the Legislature. In so far as that body is not restrained by the Constitution, it is the judge of the wisdom and fairness of its enactments. We have no right to set aside a statute unless it is clearly violative of the Constitution."

Not only could the General Assembly have attached conditions to the superintendents' receipt of compensation in connection with school transportation and budget, it could have authorized the appellants,

the Commissioner of Education, the State Board of Education, the State Treasurer and the Comptroller or some other official to make the determination that there were no duties to perform and that therefore this part of the appropriated school funds should not be transferred to the counties as provided in chapter 167, but as the judgment implies that has not been done. Annotation 172 A.L.R. 1366, 1383, Little River Drainage Dist. v. Lassater, 325 Mo. 493, 29 S.W. 2d 716. In the fields in which the legislature has deemed it necessary to delegate power to the Commissioner and State Board of Education insofar as county and local school matters are concerned, it has done so as illustrated by State ex inf. Eagleton v. Van Landuyt, Mo., 359 S.W.2d 773. But in the absence of the delegation of authority to determine the necessity or propriety of official compensation "then under our Constitution and theory of government, these are legislative powers." The legislature has acted, it has attached no conditions or delegated no authority and in these circumstances "our fundamental laws do not support the right of one appointed executive officer to fix compensation of all other appointive officers by agreements with them in disregard of the action of the body exercising legislative power." State ex rel. Rothrum v. Darby, 345 Mo. 1002, 1012, 1013, 137 S.W.2d 532, 536, 537.

Against the writ of mandamus the appellants urge that the plaintiffs do not have a clear, unequivocal right to the writ, that the writ is vague, indefinite and uncertain "and wholly fails to specifically state the acts to be performed by the defendants and the sums to be paid," that there is no allegation or proof that any funds are available for the purpose of making the payments and finally that there is "no allegation or proof that plaintiffs are not receiving payments from the county treasurers of their respective counties." Aside from its unduly technical aspects, particularly in view of their conduct and the essential issues presented by their appeal, these arguments of the appellants are paradoxical. In

view of their answers and counterclaims, in view of their present interpretation of the statutes and, undoubtedly under their previous years' experience in administering the school laws including these statutes the appellants must know what duties they have to perform and what it is they have refused to do since April 1961. If these general observations are not sufficient to dispose of these contentions it should be pointed out that the existence or nonexistence of the funds, unlike in State ex rel. Wainright-Steedman Special Road Dist. v. Ratekin, 305 Mo. 195, 264 S.W. 908, was not an issue in this case. Of course if there had been no appropriation or the funds appropriated had been expended the writ of mandamus should not issue. State ex rel. Black v. Renner, 235 Mo.App. 829, 148 S.W.2d 809. But as the court en banc observed in another leading salary case, "There is no doubt of the power of the Legislature to refuse to make an appropriation for the payment of the salary and expenses of any public officer holding office under the Constitution or laws of this state. Neither is there any doubt as to its power to abolish any office not provided for by the Constitution. And in either case the incumbent of the office has no legal ground of complaint. *But in this case the Legislature has made an appropriation for the payment of the salary and expenses of the game and fish commissioner, and the funds so appropriated are made available to pay such salary and expenses to any citizen of this state who may hold that office * * *.*" (Emphasis supplied.) State ex rel. Tolerton v. Gordon, 236 Mo. 142, 161, 139 S.W. 403, 407. It is not deemed necessary here to spell out in detail the reasons for the validity of the writ, it is sufficient to say that " '(i)t does not issue except in cases where the ministerial duty sought to be coerced is simple and definite, arising under conditions admitted or proved and imposed by law.' " State ex rel. Phillip v. Public School Retirement System, 364 Mo. 395, 405, 262 S.W.2d 569, 573.

As stated in the beginning, Mr. Frieberger, the duly elected County Superintendent of Schools of Callaway County, presents a separate and unique problem. In accordance with the special issue made by the pleadings it was stipulated that Mr. Frieberger was born on April 4, 1889, that in April 1955 he was elected county superintendent for a term of four years ending June 30, 1959, and that on April 7, 1959, he was again elected to the office and has since been performing the duties of the office. The importance of the stipulation is that in 1959 Mr. Frieberger was seventy years of age and, unless disqualified by age, has all the statutory qualifications for a county superintendent of schools. Ch. 167 RSMo 1959, V.A.M.S. The Teacher and School Employee Retirement Systems Act includes in its definition of a "teacher" "any county superintendent of schools * * * who shall be duly certified under the law governing the certification of teachers." Section 169.010(6) RSMo 1959, V.A. M.S. In view of this provision the appellants contend "that plaintiff Frieberger was automatically retired from the office of county superintendent of schools of Callaway County on July 1, 1959, by operation of law, (and) is not thereafter qualified to act as such county superintendent of schools nor entitled to receive any compensation as county superintendent of schools, and that defendants may not legally disburse state funds for said purpose * * *."

In support of their argument as to Mr. Frieberger the appellants rely only on the general rules of statutory construction and the language of the statute, §§ 169.010 to 169.130, which they say must be reasonably construed and by its terms "by operation of law" automatically retired him from the office of county superintendent. As contended, whether a retirement law is self-executing or mandatory or directory or compulsory or elective depends upon its terms. 3 McQuillin, Municipal Corporations, Sec. 12.141, p. 587. And it may be assumed that the act involved here is compulsory at age seventy, but that assump-

tion alone does not solve the problem the appellants have injected into this cause. It will be noted that the stipulation establishes but the single fact that Mr. Frieberger was 70 years of age in 1959. Again, the county is not a party to this action and neither are the trustees of any retirement fund or other parties charged with the duty of administering a retirement system. It does not appear that any prescribed procedure for retirement has been invoked or followed (3 McQuillin, Municipal Corporations, Sec. 12.161; Miller v. Police Retirement System, Mo., 296 S.W.2d 78) or even that Mr. Frieberger, aside from the mere definition of the statute, is eligible or qualified to retire under the act. Again, in short, it is neither desirable nor necessary in this particular cause to attempt a definitive spelling out of rights and duties under these important and comparatively new statutes; it is sufficient to say, even though it be assumed that the act is mandatory (Salerno v. Orleans Parish School Board, La., 117 So.2d 273) that upon this record there are insufficient admitted or established facts and parties to confidently determine Mr. Frieberger's rights (Annotation 52 A.L.R.2d 437), or at the mere behest of the appellants deprive him of the office and salary of superintendent of schools of Callaway County. State ex rel. Phillip v. Public School Retirement System, 364 Mo. 1. c. 415, 262 S.W.2d 1. c. 580.

For the reasons indicated the judgments in the consolidated actions are affirmed.

PER CURIAM.

The foregoing opinion by BARRETT, C., is adopted as the opinion of the court.

EAGER, C. J., STORCKMAN, HOLMAN, HENLEY and FINCH, JJ., and STONE, Special Judge, concur.

HYDE, J., concurs in result.

DALTON, J., not sitting.

PER CURIAM.

■ Appellants' motion for rehearing complains that the court's opinion does not decide the question of the effect of Section 169.320, RSMo 1959, V.A.M.S. (a section of the chapter on the teacher retirement system) on Ben Frieberger and his right to continue to hold the office of County Superintendent of Schools after he attained the age of seventy. The question of the effect of that statute need not be reached for the reason that Section 167.010, RSMo 1959, V.A.M.S., which defines the qualifications of the County Superintendent of Schools, contains a grandfather clause which would be and was applicable to Ben Frieberger. That section provides in part as follows:

"* * * At the time of his election he shall hold a certificate authorizing him to teach in the public schools of Missouri, and shall have completed at least one hundred twenty semester hours of college work, including at least fifteen hours in the field of education, not less than five of which shall have been in school supervision and administration; *or he shall be serving as county superintendent of public schools.*" (Emphasis added.)

Ben Frieberger was serving as County Superintendent when he reached his seventieth birthday and had been so serving for many years. That qualified him under the statute, even if he held no certificate to teach. Obviously, the provisions of the teacher retirement system statute did not take away that qualification.

The motion for rehearing is overruled.